HOSPITAL OF the UNIVERSITY OF
PENNSYLVANIA, Petitioner

v.

BUREAU OF WORKERS' COMPEN-
SATION (TYSON SHARED SER-
VICES, INC.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 20, 2007.
Decided Aug. 23, 2007.
Reargument Denied Oct. 12, 2007.

Howard R. Maniloff, Philadelphia, for petitioner.

Daniel V. DiLoretto, Philadelphia, for respondent.

BEFORE: SMITH–RIBNER, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Hospital of the University of Pennsylvania (Provider) petitions for review from an order of the Department of Labor and Industry, Bureau of Workers' Compensation (Bureau), which determined that Provider failed to timely file its fee dispute application in accordance with Section

306(f.1)(5) of the Pennsylvania Workers' Compensation Act (Act).[1] We affirm.

Provider sought payment for a motor vehicle accident involving Kenneth Seitz (Claimant). Claimant was injured on March 31, 2004, while in the course and scope of the employment with Tyson Shared Services (Employer/Insurer). He was injured when the tractor trailer he was driving overturned. Claimant had to be extracted from the tractor. He then underwent surgery in Provider's trauma operating room. Claimant remained in the hospital from March 31, 2004, through April 8, 2004.

On April 20, 2004, Provider submitted a request for payment of medical bills to Insurer in the amount of $260,704.86. On July 23, 2004, Provider submitted Claimant's medical records to Insurer. Insurer responded by sending Provider a payment of $72,943.76 on July 28, 2004, and a payment of $44,856.05, on September 1, 2004.

Each payment contained an explanation of review stating as follows:

Unless otherwise noted, charges were reduced for exceeding the reimbursement guidelines as set forth in the Pennsylvania Workers' Compensation Act. Healthcare providers are prohibited from billing for or otherwise attempting to recover from the employee the difference between the provider's charge and the amount paid on the bill. To dispute the amount or the timeliness of this analysis, please contact the Bureau of Workers' Compensation for a fee review at 1171 S. Cameron Street, Harrisburg, PA 17104.

(Provider's brief, hearing officer's opinion at 22).

On December 10, 2004, Professional Receivables Network, acting on behalf of Provider, sent a facsimile to Insurer alleging that $187,863.10 was still owed. It was alleged that medical guidelines dictated that Claimant be treated at a Level I trauma center and Provider furnished such care. Thus, Provider argued that pursuant to trauma center reimbursement guidelines, it was entitled to receive 100% reimbursement from Insurer.

On January 26, 2005, Provider submitted a medical insurance claim appeal to Insurer, requesting reconsideration. Provider alleged that it had not been correctly reimbursed by Insurer and that it was entitled to receive 100% of the medical charges. Then, on September 27, 2005, Provider sent a letter to Insurer stating that Provider had not properly billed Insurer for Claimant's medical care. Provider then included medical records, reports and a LIBC–9 form.

On December 20, 2005, Provider filed an application for fee review with the Bureau. On April 3, 2006, the Bureau issued an administrative decision denying Provider's application for fee review, finding that it was not timely pursuant to Section 306(f.1)(5) of the Act. Section 306(f.1)(5) of the Act provides as follows:

The employer or insurer shall make payment and providers shall submit bills and records in accordance with the provisions of this section. All payments to providers for treatment provided pursuant to this act shall be made within thirty (30) days of receipt of such bills and records unless the employer or insurer disputes the reasonableness or necessity of the treatment provided pursuant to paragraph (6). The nonpayment to providers within thirty (30) days for treatment for which a bill and records have been submitted shall only apply to that particular treatment or portion thereof in dispute; payment must be

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 531(5).

made timely for any treatment or portion thereof not in dispute. A provider who has submitted the reports and bills required by this section and who disputes the amount or timeliness of the payment from the employer or insurer shall file an application for fee review with the department no more than thirty (30) days following notification of a disputed treatment or ninety (90) days following the original billing date of treatment. If the insurer disputes the reasonableness and necessity of the treatment pursuant to paragraph (6), the period for filing an application for fee review shall be tolled as long as the insurer has the right to suspend payment to the provider pursuant to the provisions of this paragraph. Within thirty (30) days of the filing of such an application, the department shall render an administrative decision.

Provider then filed a request for a hearing de novo with the Bureau's fee review hearing office. At the hearing before the hearing officer, Provider stated that it had failed to send an LIBC–9 form to Insurer when it initially requested payment. Provider argued that Insurer did not receive this form until September 27, 2005. As Insurer is not liable to pay for treatment until this form is sent, Provider alleged that the statute of limitations did not begin to run until Insurer received the form. Thus, its December 20, 2005, appeal was timely.[2]

The Bureau rejected Provider's claim and found that Provider's application for fee review was filed twenty months after to the original billing date for treatment. Accordingly, the administrative determination was affirmed.

Provider now appeals to this Court.[3] Provider alleges that its application for fee review was timely based on this Court's decision in *Harburg Medical Sales Co. v. Bureau of Workers' Compensation (PMA Insurance Co.)*, 784 A.2d 866 (Pa.Cmwlth. 2001).

In *Harburg*, a claimant was prescribed an electric muscle stimulator by a physician. A medical sales company (a provider) furnished the equipment to the claimant and billed his insurer on January 9, 1998. On March 4, 1998, the insurer denied payment stating that the service provided was not documented in the records received. The provider responded by filing an application for fee review alleging that the insurer had not made payment in a timely fashion.

The Bureau determined that the insurer's payment was not late as the insurer was not required to pay the bill until the provider complied with the reporting requirements of Section 306(f.1)(2) of the Act.[4] The provider did not appeal the Bureau's determination. Instead, it resubmitted its bill to the insurer on January 26, 2000. The insurer again denied payment. The provider then filed an application for fee review with the Bureau on March 11,

---

2. Insurer stipulated that it received a LIBC–9 form from Insurer on October 10, 2005. Insurer also stipulated that its file did not contain a LIBC–9 form sent at an earlier date.

3. This Court's scope of review is limited to determining whether constitutional rights were violated, an error of law committed or whether the necessary findings are supported by substantial evidence. *Lehigh County Vo-Tech School v. Workmen's Compensation Ap-*

*peal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995).

4. 77 P.S. § 531(2). Section 306(f.1)(2) states that a provider must file periodic reports with the employer/insurer, on a form prescribed the department, which must include a claimant's history, diagnosis, treatment, prognosis and physical findings. It further states that the insurer is not liable to pay for treatment until the report is filed.

2000. The Bureau determined that January 9, 1998, was the original billing date and March 4, 1998 was the date the provider was informed that the bill was disputed. As an application for fee review had to be filed no more than thirty days following notification of a disputed treatment or ninety days following the original billing date of treatment, the Bureau determined that the application for fee review, filed on March 11, 2000, was untimely.

The provider then appealed to this Court. The provider argued that as the insurer was not required to pay until the proper forms were filed, the statute of limitations could not begin to run until the bill was properly submitted and the provider was notified that the bill was in dispute. Thus, the statute did not begin to run until it properly submitted its bill on January 26, 2000. We agreed.

This Court determined that the Bureau had the authority to determine whether or not a provider has complied with the reporting requirements. However, if the provider has not complied, it may resubmit the bill with the required reports. "Any other interpretation would leave the provider without any recourse to seek payment for a disputed treatment if the provider is barred from resubmitting a bill that has gone through the fee review process and denied on the basis of failure to comply with the reporting requirements— a failure which can easily be remedied by providing the pertinent missing information or reports." *Harburg*, 784 A.2d at 870.

Insurer argues that *Harburg* is not applicable to the present action as Insurer actually paid the bill in a timely manner and did not reject it based on a failure to provide records. Insurer cites to this Court's decision in *Temple University Hospital v. Pennsylvania Department of Labor and Industry*, 873 A.2d 780 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 583 Pa. 698, 879 A.2d 784 (2005), in support of its argument.

In *Temple*, a claimant was admitted to Temple University Hospital (a provider) for work-related burns. The provider billed the employer in the amount of $106,199.81, for the services furnished. The employer responded by sending the provider two checks, totaling $34,156.34. The employer also provided the provider with a review of the charges and the amount deemed to be reimbursable.

One year later, the provider submitted a bill to the employer's insurance carrier. The insurer did not respond. The provider then filed an application for fee review. The insurer argued that the application for fee review was not timely. The provider claimed that it was timely as the employer was not the responsible insurer. Therefore, the statute of limitations did not begin to run until a bill was submitted to the insurer.

We rejected the provider's argument. We stated that "[f]or [p]rovider to argue that the time period did not begin to run until it sent [insurer] the bill ignores the fact that payment was in fact made to and accepted by [p]rovider and, in accordance with the Act, if it had a dispute as to the amount paid, it had 90 days after submission of the bill to file a petition." *Temple*, 873 A.2d at 782.

The Bureau noted that the present case can be distinguished from *Harburg*. *Harburg* holds that an insurer is not required to pay until a provider submits the bill and the appropriate documentation. However, here Insurer did not reject the bill based on an incomplete record. It instead paid the bill to the extent it determined itself liable.

The Bureau found that once payment is made a provider "cannot sleep on its rights." (Provider's brief, Bureau opinion at 31). When payment is made, the provider must file its application within the time limits proscribed under Section 306(f.1)(5) of the Act.

██ We agree with the determination of the Bureau. Section 306(f.1)(2) of the Act provides that an insurer is not obligated to pay until the proper form and reports have been submitted. However, when an insurer does not reject payment based on an incomplete record and actually makes payment, with only the amount to be paid being in dispute, the provider is required to file the petition for fee review within the time limits proscribed under Section 306(f.1)(5) of the Act.

██ Provider argues that it could not have filed an application for fee review with the Bureau until it filed a report on the proper form with Insurer. We agree that "only a provider who has submitted the required reports and bills to an insurer has standing to seek review of the fee dispute...." *Harburg*, 784 A.2d at 870. However, we reject Provider's contention that the statute of limitations cannot begin to run until a provider decides to perfect standing by completing its own paperwork. Nothing prevented Provider from submitting the proper paperwork to Insurer within the prescribed appeal period. Once an insurer makes payment, a provider cannot ignore the time limits for appeal by failing to submit its own paperwork.

██ The original billing date was April 20, 2004, and in 2004, the Insurer made payments, with the remaining balance disputed as exceeding the reimbursement guidelines. Provider did not challenge this determination until December 20, 2005. As such, Provider failed to file the application for fee review within ninety days of the original billing date or within thirty days of the notification that treatment was disputed.

Accordingly, the order of the Bureau is affirmed.

## ORDER

AND NOW, this 23rd day of August, 2007, the order of the Bureau of Workers' Compensation is affirmed.