**ENTERPRISE RENT–A–CAR, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CLABAUGH), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 24, 2007.
Decided Sept. 27, 2007.
Reargument Denied En Banc
Nov. 13, 2007.

Sean B. Epstein and Gregory J. Fischer, Pittsburgh, for petitioner.

Fred H. Hait, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, COHN JUBELIRER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Enterprise Rent–A–Car (Employer) petitions for review from an Order of the Workers' Compensation Appeal Board (Board) which affirmed the Decision of a Workers' Compensation Judge (WCJ) granting a Penalty Petition filed by Edward Clabaugh (Claimant). We reverse for the reasons stated below.

Claimant sustained injuries in the course and scope of his employment on July 31, 2002. He received workers' compensation benefits based on those work-related injuries that left him as a quadriplegic.

In 2004, Claimant filed a Utilization Review Request (UR Request) seeking pro-

spective review of the reasonableness and necessity of home modifications. A Utilization Review Organization (URO) assigned the matter to Harold K. Gever, M.D., who was supplied with voluminous medical records as well as a "Correspondence and Floor Plan from Musser, Inc. Home Builders (Musser, Inc.) dated 10/20/04" and a "Specifications Sheet from [Musser, Inc.] dated 7/29/04." Dr. Gever issued the URO's report on November 26, 2004 that stated as follows:

> The treatment under review is the "**Proposed addition/modification to the home … to permit long-term in home medical care**" recommended by Michael A. DeMichele, M.D. "Prospectively" as of 09/20/2004.

> The care of a high cervical tetraplegic in the home setting requires numerous accommodations (1, 2).(sic) At the very least, the home must be handicapped accessible both for access to the living facility as well as within the living facility itself (2).(sic) There must be enough floor space to accommodate the large amount of supplies necessary to support and sustain life including, but not limited to, a ventilator, materials for feeding, materials for a bowel program, back-up power supplies (in case of power failure), and bathing equipment.

> In addition, since the care of a high level tetraplegic always involves the requirement of another person, there must be an adjustment in living space to also comfortably accommodate at least two people 24 hours/day along with others who come in throughout the day to assist with various activities of daily living. After viewing the photos submitted in this file, it is my impression that the patient's current living situation does not provide adequate floor space for necessary medical equipment and the ac-

> commodation of multiple people, is not handicapped accessible within the home, and affords the patient little privacy.

> After review of the records submitted, it is my impression that the "**proposed addition/modification to the home … to permit long-term in home medical care**" recommended by Michael A. DeMichele, M.D. "Prospectively" as of 09/20/2004 are all reasonable and necessary, since without these accommodations the only other available reasonable alternative is to place this patient in a nursing home or other supervised living facility.

Defendant did not appeal the Utilization Review Determination.

Claimant filed a Penalty Petition on November 28, 2005 alleging Employer violated the Pennsylvania Workers' Compensation Act[1] (Act) by "failing to timely pay bills for home accommodations determined to be reasonable and necessary in a prospective UR Determination which Defendant failed to appeal." He sought fifty percent penalties and unreasonable contest attorney's fees.

Before the WCJ, Jeffrey Musser testified that the original estimate for the remodeling of Claimant's home was $108,226.00. He testified that as the work progressed, modification from the original plans had to be made. Moreover, he indicated that the estimate was given in July of 2004, but because of delays the work did not begin until May or June of 2005. Mr. Musser explained that construction costs increased a significant amount in the interim.

Documentation submitted into the record revealed that the final cost of the home remodeling was $200,626.71 and that the expected insurance reimbursement was

---

1. Act of June 2, 1915, P.L. 736, *as amended,*   77 P.S. §§ 1–1041.4; 2501–2626.

$160,501.31.[2] It was further acknowledged that Employer had made payments totaling $114,149.67. Mr. Musser alleged a shortfall of $46,891.20.

■ By a Decision circulated August 18, 2006, the WCJ acknowledged that, in general, employers are liable under the Act for eighty percent of home modifications and that Employer was bound by the unappealed URO determination. The WCJ further determined that "it is both foreseeable and commonplace that there will be changes and additional costs beyond those set forth in the original proposal" noting that there are many costs, such as those of materials, that can fluctuate beyond the control of building contractors. He concluded that Employer violated the Act by failing to pay for the costs of the home modifications.[3] The WCJ instructed Employer to pay eighty percent of the outstanding balance due Musser, Inc.[4] and awarded ten percent penalties for this violation. He found Employer's contest was reasonable and, as such, declined an award of attorney's fees in light of the novel legal issue presented. The Board affirmed the WCJ's Decision in an Order dated April 4, 2007. This appeal followed.[5]

■ Employer argues that the WCJ erred in granting Claimant's Penalty Petition. Specifically, it contends that the WCJ erroneously concluded that Employer should have filed a retrospective UR Request in order to determine the reasonableness and necessity of the costs of the remodeling work that were over and above the estimated cost. It points out that URO's may only consider the reasonableness and necessity of *medical treatment* and may not decide the reasonableness of *fees* charged by a provider. Employer notes that it paid Musser, Inc. $114,149.37 for the remodeling of Claimant's home, greater than the proposed estimated cost of $108,226.00. It asserts that if Musser, Inc. was not satisfied with its payment, it should have filed for fee review. It alleges that because the WCJ entertained the Penalty Petition, and ultimately directed it to pay additional charges said to be outstanding by Musser Inc., the WCJ inappropriately conferred jurisdiction over fee disputes on himself.[6] We agree.

2. The $160,501.37 figure represents eighty percent of the $200,626.71 finalized costs. As will be explained more fully later in this Opinion, an employer is generally liable for eighty percent of home modification and/or retrofitting.

3. The WCJ added that even if the original URO determination were narrowly interpreted to read that only the estimated cost of the home modifications were reasonable and necessary, the finalized bills were still properly submitted for payment. As there is no dispute that the bills in question are causally related to Claimant's work injury, and Employer did not seek retrospective review of the finalized costs, it would nonetheless be responsible for eighty percent of the final cost. He further stated that if the issue of the reasonableness and necessity of the additional costs were before him, he would find in Claimant's favor as "even the full amount of

the bills pales in comparison to the probable cost of nursing home care."

4. Technically, the shortfall alleged by Claimant and Mr. Musser already took the twenty percent reduction into consideration. Therefore, the WCJ inappropriately instructed further reduction in the amount reimbursable. This fact, however, is immaterial to our analysis.

5. Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *Guthrie v. Workers' Compensation Appeal Board (Travelers' Club, Inc.)*, 854 A.2d 653 (Pa.Cmwlth.2004).

6. Employer did not indicate in its Notice of Appeal filed with the Board that Claimant, in filing his Penalty Petition, was attempting to confer jurisdiction on the WCJ concerning a

Section 306(f.1)(1)(i) of the Act, 77 P.S. § 531(1)(i) provides, in pertinent part that, "the employer shall provide payment in accordance with this section for reasonable surgical and medical services, services rendered by physicians or other health care providers, including an additional opinion when invasive surgery may be necessary, medicines and supplies, as and when needed." Section 306(f.1)(1)(ii) of the Act, 77 P.S. § 531(1)(ii), indicates that "[i]n addition to the above services, the employer shall provide payment for medicines and supplies, hospital treatment, services and supplies and *orthopedic appliances,* and prostheses in accordance with this section." (Emphasis added). Generally, pursuant to Section 306(f.1)(5)of the Act, 77 P.S. § 531(5), payment for medical expenses must be made within thirty days of receipt of the bills.

In order to determine the amount of payment required for an "orthopedic appliance," Section 306(f.1)(3)(i) of the Act, 77 P.S. § 531(3)(i), states:

If the commissioner determines that an allowance for a particular provider group or service under the Medicare program is not reasonable, it may adopt, by regulation, a new allowance. If the prevailing charge, fee schedule, recommended fee, inflation index charge, DRG payment or any other reimbursement has not been calculated under the Medicare program for a particular treatment, accommodation, product or service, the amount of the payment may not exceed eighty per centum of the charge most often made by providers of similar training, experience and licensure for a specific treatment, accommodation, product or service in the geographic area where

the treatment, accommodation, product or service is provided.

Case law has interpreted the term "orthopedic appliances" to include home modifications. *Rieger v. Workmen's Compensation Appeal Board (Barnes & Tucker Co.),* 104 Pa.Cmwlth.42, 521 A.2d 84 (1987). Furthermore, this Court has held that the eighty percent cap established in Section 306(f.1)(3)(i) of the Act applies to modifications and retrofitting as they are covered by the term "product." *Griffiths v. Workers' Compensation Appeal Board (Seven Stars Farm, Inc.),* 861 A.2d 424 (Pa. Cmwlth.2004).

Upon review of the aforementioned, it is evident that Employer was indeed responsible for payment of the cost of remodeling Claimant's home. Further, Section 306(f.1)(5) of the Act dictates that payment be made within thirty days of receipt of each invoice. Employer did make payments, albeit not sufficient payments to satisfy the full balance as requested by Musser, Inc. As such, Musser Inc., dissatisfied with the amount of payment should have sought fee review.

Section 306(f.1)(5) of the Act, 77 P.S. 531(5), provides, in pertinent part:

A provider who has submitted the reports and bills required by this section and who disputes the *amount* or *timeliness* of the payment from the employer or insurer shall file an application for fee review with the department no more than thirty (30) days following notification of a disputed treatment or ninety (90) days following the original billing date of treatment. (Emphasis added).

When a provider has filed an Application for Fee Review Pursuant to Section 306(f.1) (Application), the Bureau of Work-

matter ordinarily subject to fee review. Nonetheless, an objection to subject matter jurisdiction can be raised at any time. *Stover*

*v. Workmen's Compensation Appeal Board (SCI Graterford),* 671 A.2d 1217 (Pa.Cmwlth. 1996).

ers' Compensation (Bureau) shall render an administrative decision within thirty days. 34 Pa.Code § 127.256. A provider or an insurer shall have the right to contest an adverse administrative decision by filing a written request for a hearing with the Bureau. 34 Pa.Code. § 127.257. Any party aggrieved by a fee review adjudication by a Bureau hearing officer may appeal to this Court. 34 Pa.Code § 127.261.

Once an insurer makes a payment to the extent it deems itself liable, the provider must file his Application within the time limits proscribed under Section 306.1(f.1)(5) of the Act or it will not be considered. *Hospital of the Univ. of Pa. v. Bureau of Workers' Compensation (Tyson Shared Serv., Inc.)*, 932 A.2d 1010 (Pa.Cmwlth., 2007).

Employer did not deem itself liable for the full cost requested by Musser Inc., $160,501.31. Instead, it made payments totaling $114,149.67. This resulted in a dispute over the amount of payment implicating the fee review process enunciated in Section 306(f.1)(5) of the Act. Because Musser, Inc. never sought fee review, it waived its right to challenge the amount paid by Employer.[7] *Tyson.*

We believe that Claimant's filing of his Penalty Petition was an attempt to confer jurisdiction on the WCJ for a fee review as he sought reimbursement of the alleged outstanding balance in addition to a penalty. Jurisdiction in fee disputes, however, lies with the Bureau and its hearing examiners, not WCJs. 34 Pa.Code §§ 127.256, 127.257.

Because the WCJ lacked jurisdiction to resolve a fee dispute, he committed error in granting Claimant's Penalty Petition. We note that Section 435(d)(i) of the Act, 77 P.S. § 435(d)(i), provides that an employer may be penalized for its failure to comply with the Act. Employer paid out $114,149.67 for Claimant's home remodeling. This is $5,923.67 more than the $108,226.00 contained in the original estimate.[8] Moreover, this is $27,568.87 more than its original anticipated payments once the twenty percent reduction contained in Section 306(f.1)(3)(i) of the Act is considered.[9] As Employer declined to pay any further costs believing it had satisfied its obligations under the Act, it was incumbent upon Musser, Inc. to file for fee review. As noted above, it did not. Therefore, by operation of law, Employer's debt was considered fully satisfied. Thus, there could be no violation of the Act for its refusal to pay the money Musser Inc. continued to allege was past due. Absent a violation of the Act, Claimant's Penalty Petition should not have been granted.

7.  Section 109 of the Act, 77 P.S. § 29, defines the term "provider" as a "health care provider." That same Section, in turn, defines "health care provider" as:

> [A]ny person, corporation, facility or institution licensed or otherwise authorized by the Commonwealth to provide health care services, including, but not limited to, any physician, coordinated care organization, hospital, health care facility, dentist, nurse, optometrist, podiatrist, physical therapist, psychologist, chiropractor or pharmacist and an officer, employe or agent of such person acting in the course and scope of employment or agency related to health care services.

It does appear from a literal reading of this Section that a contractor is not included in the definition of a provider, thereby excluding Musser, Inc. from the fee review process. Our holding in *Griffith's*, however, finding that those who perform remodeling or retrofitting are subject to the cost containment provisions of Section 306(f.1)(3)(i) of the Act, must also be read to include contractors in the definition of a "provider." Consequently, a contractor may utilize the fee review procedures and is also limited by them as well.

8.  $114,149.67 − $108,226.00 = $5,923.67.

9.  $108,226.00 × .80 = $86,580.80. $114,149.67 − $86,580.80 = $27,568.87.

In ruling as we do, we are ever mindful of our recent holding in *Hough v. Workers' Compensation Appeal Board (AC&T Cos.)*, 928 A.2d 1173 (Pa.Cmwlth., No. 2198 C.D.2006, filed July 17, 2007), wherein we stated that Section 306(f.1)(5) of the Act does not require a provider to seek fee review before a claimant "may proceed on a penalty petition alleging *untimely* payment of medical bills." (Emphasis Added). The claimant in that case took several medications for his work-related reflex sympathetic dystrophy. As required by the Act, the provider submitted all outstanding balances, health insurance claim forms, and reports to the employer. The employer, however, repeatedly failed to reimburse the provider for the claimant's prescriptions ultimately leading him to file a penalty petition.

In concluding the WCJ did not err in awarding fifty percent penalties on the $4,250.53 in outstanding bills, we found that unlike the utilization review process, fee review does not bind all parties to the described procedures. Rather, the fee review provision only addresses, employers, insurers, and providers. We noted that the applicable provisions do not mention employees and/or claimants whatsoever. We specifically found that there is no language in the fee review provision that limits an employee's right to pursue a penalty petition under Section 435 of the Act as a result of a late payment of medical bills. We further recognized, relying on *Palmer v. Workers' Compensation Appeal Board (City of Phila.)*, 850 A.2d 72 (Pa.Cmwlth. 2004), that the Act permits the imposition of penalties may be imposed to secure compliance with the Act.

■ Nonetheless, we believe *Hough* is distinguishable. The *Hough* case involved a dispute as to the *timeliness* of payment as opposed to a dispute over the amount due and, similarly, the employer in that case did not challenge the amount due for the services provided but rather refused payment for the prescription medication altogether. As the employer continually made untimely payments, a penalty petition was a proper filing to ensure compliance with the Act. *Palmer.* In this case, however, Employer did make substantial payments for Claimant's home remodeling consistent with Section 306(f.1)(1)(ii) of the Act. Upon completing payments it believed were sufficient to satisfy its obligations under the Act, a genuine dispute arose as to whether its payments were, in fact, sufficient, or whether it was responsible for further payments to satisfy the full amount alleged by Musser, Inc. The statutorily mandated remedy for this situation is the fee review process. If a claimant, or a WCJ, were able to settle a fee dispute such as this in the context of a penalty petition, that would render the provisions concerning fee review absolutely meaningless. A fundamental presumption in ascertaining the intention of the General Assembly in the enactment of a statute is that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable. *Hannaberry HVAC v. Workers' Compensation Appeal Board (Snyder, Jr.)*, 575 Pa. 66, 834 A.2d 524 (2003).

We outright reject the determination by the WCJ and the Board that Employer should have filed a prospective utilization review if it did not believe it should be responsible for the charges over and above the proposed estimate. Section 306(f.1)(6)(i) of the Act, 77 P.S. § 531(6)(i), provides that the reasonableness or necessity of all treatment provided by a health care provider under this act may be subject to prospective, concurrent or retrospective utilization review. URO's shall decide only the reasonableness or necessity of the treatment under review. 34 Pa.

Code § 127.406(a). They shall not decide the reasonableness of the fees charged by a provider. 34 Pa.Code § 127.406(b). We note that in issuing his report concerning the reasonableness and necessity of the then proposed home modifications, Dr. Gever made no reference to estimated cost or approve the charges in any way. Moreover, he would be precluded from doing so under 34 Pa.Code § 127.406(b). Similarly, if a prospective UR Request were filed, the URO would be precluded from reviewing the reasonableness and necessity of the additional charges.[10]

### ORDER

AND NOW, this 27th day of September, 2007, the Order of the Workers' Compensation Appeal Board in the above-captioned matter is reversed.

---

**10.** Because of our ruling in this case, we need not address Employer's argument that the WCJ inappropriately found that he would find the increased costs in Claimant's home remodeling reasonable and necessary because he believed the total alleged cost of the modifications would in all probability be significantly less than the cost of nursing home care or its argument that Musser, Inc. did not file it bills on the appropriate forms. Moreover, we will not address its alternative argument that because the original estimated costs were submitted to the URO during the utilization review process, Claimant should somehow be bound by the original estimate.