NATIONWIDE MUTUAL
FIRE INSURANCE
CO., Petitioner

v.

**BUREAU OF WORKERS' COMPENSATION FEE REVIEW HEARING OFFICE and Hospital of the University of Pennsylvania, Respondents.**

Commonwealth Court of Pennsylvania.

Argued April 2, 2009.

Decided July 28, 2009.

Publication Ordered Oct. 2, 2009.

Paragraph 26; S.R.R. 13b.

Daniel V. DiLoretto, Philadelphia, for petitioner.

Howard R. Maniloff, Philadelphia, for respondent, Hospital of the University of Pennsylvania.

BEFORE: COHN JUBELIRER, Judge, SIMPSON, Judge (P.), and FRIEDMAN, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Nationwide Mutual Fire Insurance Co. (Insurer) petitions for review of the Order of the hearing officer of the Bureau of Workers' Compensation Fee Review Hearing Office (Bureau), which ordered the Bureau of Workers' Compensation Fee Review Section to consider the merits of the Hospital of the University of Pennsylvania's (Provider) Application for Fee Review (Application). In doing so, the hearing officer determined that, contrary to the Fee Review Section's determination, Provider's Application was timely filed within 90 days of the "original billing date of treatment" pursuant to Section 306(f.1)(5) of the Workers' Compensation Act (Act)[1] and 34 Pa.Code § 127.252(a).[2]

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 531(5). Section 306(f.1)(5) states:

The employer or insurer shall make payment and providers shall submit bills and records in accordance with the provisions of this section. All payments to providers for treatment provided pursuant to this act shall be made within thirty (30) days of receipt of such bills and records unless the employer or insurer disputes the reasonableness or necessity of the treatment provided pursuant to paragraph (6). The nonpayment to providers within thirty (30) days for treatment for which a bill and records have been submitted shall only apply to that particular treatment or portion thereof in dispute; payment must be made timely for any treatment or portion thereof not in dispute. A provider who has submitted the reports and bills required by this section and who disputes the amount or timeliness of the payment from the employer or insurer shall file an application for fee review with the department no more than thirty (30) days following notification of a disputed treatment or ninety (90) days following

the **original billing date** of treatment. If the insurer disputes the reasonableness and necessity of the treatment pursuant to paragraph (6), the period for filing an application for fee review shall be tolled as long as the insurer has the right to suspend payment to the provider pursuant to the provisions of this paragraph. Within thirty (30) days of the filing of such an application, the department shall render an administrative decision.

77 P.S. § 531(5) (emphasis added).

2. 34 Pa.Code § 127.252(a) states that:

Providers seeking review of fee disputes shall file the original and one copy of a form prescribed by the Bureau as an application for fee review. The application shall be filed no more than 30 days following notification of a disputed treatment or 90 days following the original billing date of the treatment which is the subject of the fee dispute, whichever is later. The form shall be accompanied by documentation required by § 127.253 (relating to application for fee review—documents required generally).

On October 27, 2005, David McCallister (Claimant) fell and suffered injuries while employed by David T. Tegethoff Contractors (Employer). Claimant was taken by helicopter to Provider's trauma center and was admitted to Provider. Provider treated Claimant between October 27, 2005 and December 27, 2005 for traumatic brain injuries and other injuries sustained in the fall. On January 1, 2006, Provider's automated computer process created an electronic bill in Provider's computer system, in the form of a UB92 Form bill (UB92),[3] relating to the charges for Claimant's care between October 27, 2005 and December 27, 2005. The "Date" field of the UB92 read January 1, 2006.[4] "Provider outsources its' [sic] workers' compensation billing functions to PRN, Professional Receivables Network." (Hearing Officer's Decision, Findings of Fact (FOF) ¶ 6.) PRN received the billing file for Claimant's care from Provider on January 11, 2006. PRN requested an itemized bill and Claimant's medical records from Provider, which it received on January 20, 2006. On January 20, 2006, PRN mailed the UB92, along with supporting documentation, to Insurer for Claimant's care in the amount of $857,523.00. Insurer received this bill on January 24, 2006. On February 23, 2006, Insurer remitted payment in the amount of $295,726.10 with a message stating that this was Insurer's payment in full for treatment received by Claimant between October 27, 2005 and December 27,

2005. PRN submitted a number of applications for fee review with the Bureau, which were declined for technical defects. Finally, on April 13, 2006, PRN filed its Application with the Bureau, disputing "the amount of payment made by insurer for" Provider's care of Claimant between October 27, 2005 and December 27, 2005. On May 4, 2006, the Bureau issued an administrative decision that the Application was denied because it was not filed within the time limits set out by Section 306(f.1)(5). An attachment to this decision indicated that the Bureau considered the original billing date to be January 1, 2006, the date stated on the UB92. Provider requested a hearing from the Fee Review Section, which was held.

After the hearing, the hearing officer determined that the original billing date for purposes of Section 306(f.1)(5) was the date the UB92 was sent by PRN to Insurer, January 20, 2006, and that the Application was therefore timely, having been filed 83 days after the original billing date of the treatment. Insurer now appeals to this Court.[5]

On appeal, Insurer argues that the hearing officer misinterpreted Section 306(f.1)(5), and that the "original billing date of treatment" from which Provider's 90–day time period to file its Application began to run was January 1, 2006, the date stated on the UB92, not the date the bill

---

34 Pa.Code § 127.252(a).

**3.** Per the Bureau's regulation at 34 Pa.Code § 127.201(a), "[r]equests for payment of medical bills shall be made either on the HCFA Form 1500 or the UB92 Form (HCFA Form 1450), or any successor forms, required by HCFA for submission of Medicare claims."

**4.** The record does contain an additional copy of this UB92, which also bears a stamp indicating that it was mailed on January 20, 2006. It appears, however, that the UB92 bearing the mailing stamp was not initially submitted

with Provider's Application but was only submitted by Insurer just prior to the hearing before the hearing officer. (See *Documentary Evidence, February 27, 2007.*)

**5.** Our "scope of review is limited to determining whether there has been a violation of constitutional rights or errors of law committed and whether necessary findings of fact are supported by substantial evidence." *Harburg Medical Sales Co. v. Bureau of Workers' Compensation (PMA Ins. Co.)*, 784 A.2d 866, 868 n. 4 (Pa.Cmwlth.2001).

was sent by PRN to Insurer. Insurer argues that Provider's Application was, therefore, untimely. We agree.

Section 306(f.1)(5) states in relevant part that:

A provider who has submitted the reports and bills required by this section and who disputes the amount or timeliness of the payment from the employer or insurer shall file an application for fee review with the department no more than thirty (30) days following notification of a disputed treatment or ninety (90) days following the **original billing date of treatment.**

77 P.S. § 531(5) (emphasis added). This Court has not previously directly addressed the meaning of the phrase "original billing date of treatment." In keeping with the plain meaning of the statute, and in the interests of administrability, we hold that the "original billing date of treatment" for purposes of Section 306(f.1)(5) and Section 127.252(a) is the date stated on the UB92. To hold otherwise would be to invite litigation in every case where an application for fee review was found to be untimely. This case itself is an example of this. The Bureau initially used the date stated on the UB92 to determine the timeliness of the Application. Provider appealed and it was only after an administrative hearing involving two witnesses, twelve exhibits, and proceedings spanning 48 transcript pages that the hearing officer was able to determine the date that the UB92 was actually mailed to Insurer. In addition to offering clarity, our interpretation is not inequitable. If a provider does not wish its time to file an application for fee review to run until it sends its UB92 to an insurer, it may choose to insert the date its UB92 is actually mailed on that UB92. In other words, the date stated on a UB92

sent by a provider to an insurer is, or should be, within the control of the provider. There is no apparent reason that providers need to place dates on their bills that are substantially prior to the dates on which they mail those bills.

Provider argues that such a rule goes against prior statements by this Court. For instance, Provider argues, in *Temple University Hospital v. Department of Labor & Industry, Bureau of Workers' Compensation, Fee Review Hearing Office*, 873 A.2d 780 (Pa.Cmwlth.2005), this Court stated that if the provider in that case "had a dispute as to the amount paid, it had 90 days *after submission of the bill* to file a petition." *Id.* at 782 (emphasis added). Similarly, in *Hospital of the University of Pennsylvania v. Bureau of Workers' Compensation (Tyson Shared Services, Inc.)*, 932 A.2d 1010 (Pa. Cmwlth.2007), this Court stated "[o]n April 20, 2004, Provider submitted a request for payment of medical bills to Insurer.... The original billing date was April 20, 2004."[6] *Id.* at 1010, 1014. These passing references do not stand for the proposition that this Court interpreted the term "original billing date of treatment" in Section 306(f.1)(5) to mean the date on which the bill was submitted. Indeed, in neither of these cases was the issue at bar in this case raised, nor is it clear what the date on the face of the bill was in either case or how this Court determined the date the bill was submitted in either case.

In *Temple*, the provider in that case, Temple University Hospital (Hospital) billed Kemper Insurance Company (Kemper) for the claimant's treatment on May 3, 2001. *Temple*, 873 A.2d at 780. Kemper paid the Hospital two checks on May

---

6. Insurer, citing the record in *Tyson*, argues that April 20, 2004, was, in fact, the date

stated on the UB92 in that case. (Insurer's Supp. Br. at 10.)

7, 2001 and October 26, 2001, which combined covered only part of the amount billed. *Id.* Along with these payments, Kemper sent the Hospital audit forms listing another insurer, American Protection Agency (American) as the proper insurer. *Id.* at 780–81. On May 8, 2002, Kemper billed American for the costs of the claimant's treatments that were not paid by Kemper. American did not reply to this billing and the Hospital, on July 15, 2002, "filed an application for fee review with the Bureau." *Id.* at 781. The Bureau found the Hospital's application to be untimely, and that the 90–day time period began to run on May 3, 2001. This Court upheld that determination, stating:

> If Provider had a dispute as to the amount or timeliness of the payment, as it did here, it was required to file a petition within 90 days of the original billing date. For Provider to argue that the time period did not begin to run until it sent American a bill ignores the fact that payment was in fact made to and accepted by Provider and, in accordance with the Act. . . .
>
> Moreover, this is not a case where the insurer was not known to Provider. The audit forms sent by Kemper stated that the insurer was American. The forms further provided that all additional billing was to be sent to Kemper and Kemper, in fact, was the party who sent payment to Provider, which payment was accepted by Provider.

*Id.* at 782. In *Temple,* then, the issue was not whether "original billing date" meant the date the bill was sent to an insurer or the date stated on the bill, but whether the time period for filing an application for fee review could be reset by billing a second insurer.

In *Tyson,* the Hospital of the University of Pennsylvania, Provider in this case as well, billed the insurance company in that case, Tyson Shared Services (TSS) on April 20, 2004, for medical treatment provided to the claimant in that case. *Tyson,* 932 A.2d at 1011. Provider did not give the claimant's medical records supporting the billing to TSS until July 23, 2004. *Id.* TSS sent payments to Provider on July 28, 2004 and September 1, 2004. *Id.* These payments amounted to only part of the total amount billed by Provider, and were accompanied by statements from TSS explaining that the amount of payment had been reduced because the amounts billed exceeded the amounts permitted under the Act. *Id.* On December 10, 2004, PRN, on Provider's behalf, requested the balance of the amount initially billed, explaining that the total amount was reimbursable under the Act. *Id.* Provider filed a claim appeal with TSS on January 26, 2005. "[O]n September 27, 2005, Provider sent a letter to Insurer stating that Provider had not properly billed Insurer for Claimant's medical care. Provider then included medical records, reports and a LIBC–9 form." *Id.* Provider argued that because TSS was not obligated under the Act to render payment until the LIBC–9 Form was sent, then the 90–day time period should not begin to run until TSS received the form. The Bureau rejected this argument. This Court upheld the Bureau's determination on the ground that TSS had made partial payment to Provider, and it was not TSS's liability that was in question, but the amount of that liability. This Court also stated that:

> we reject Provider's contention that the statute of limitations cannot begin to run until a provider decides to perfect standing by completing its own paperwork. Nothing prevented Provider from submitting the proper paperwork to Insurer within the prescribed appeal period.

*Id.* at 1014. Similarly, nothing that Provider has pointed out to us in this case

prevented it from dating its bill closer to the time the bill was to be sent to Insurer.

Both parties in this case make arguments regarding the intent of the cost-containment measures found in the Act, such as Section 306(f.1)(5). This Court believes that interests such as the prompt payment of medical bills and the containment of medical costs are best served by a process that provides an easily-determined original billing date that will be readily evident to both the parties and the Bureau, without the necessity for in-depth fact finding in every case such as the one at bar. We, therefore, hold that the original billing date of the treatment at issue is January 1, 2006, the date stated on the UB92. Provider did not file its Application until April 13, 2006, 102 days after the original billing date and 49 days after Insurer disputed the amount of the bill. For these reasons, we reverse the order of the hearing officer of the Bureau of Workers' Compensation Fee Review Hearing Office finding that Provider's Application was timely.

## ORDER

NOW, July 28, 2009, the order of the Bureau of Workers' Compensation, Fee Review Hearing Office, in the above-captioned matter is hereby REVERSED.