# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

American Body Care, : 
                 Petitioner : 
 : 
          v. : No. 24 C.D. 2016
 : Submitted: July 1, 2016
Workers' Compensation Appeal : 
Board (Kmart Corporation and : 
Sedgwick Management Services), : 
            Respondents : 

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**           **FILED: September 2, 2016**

American Body Care (Provider) asks whether a Workers' Compensation Judge (WCJ) erred in dismissing its penalty petition for lack of standing. Specifically, Provider argues the Workers' Compensation Appeal Board (Board) erred in affirming the WCJ's decision that Provider lacked standing to file a penalty petition where Provider lacked any other remedy under the Workers' Compensation Act[1] (Act). Provider further asserts the decisions of the Board and the WCJ result in a denial of its right to challenge the failure to pay its duly submitted medical bills in violation of its right to due process. Upon review, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§1–1041.4, 2501–2708.

# I. Background

In October 2014, Provider filed a penalty petition against Kmart Corporation (Employer) and its workers' compensation insurance carrier. Through its penalty petition, Provider averred:

> [Employer] committed a fraud by negotiating with Claimant, Richard Nimchuk [(Claimant)] to agree in a [Compromise and Release Agreement (C&R)] that there was no need to pay the bills of [Provider] despite the bills having been submitted to Employer/carrier; no notice to [Provider] so [it] could object to the [C&R] and knowing that Provider is not allowed to collect from Claimant. This violates the U.S. and Pennsylvania due process clauses and constitutes fraud.

WCJ's Op., 3/13/15, at 3; Reproduced Record (R.R.) at 1a. Employer denied a violation of the Act or its regulations.

A brief proceeding ensued at which counsel for Employer, Claimant and Provider appeared. At that time, the WCJ directed the parties to file letter briefs on the issue of whether Provider had standing to file its penalty petition.

Thereafter, the WCJ issued a decision in which he made the following findings. Claimant and Employer entered into a C&R by stipulation pursuant to Section 449 of the Act, 77 P.S. §1000.5(b).[2] At an October 2013 hearing, the WCJ approved the C&R, and he subsequently circulated a decision that attached the approved C&R. A review of the approved C&R reveals a date of injury of October 14, 2011. The C&R states it resolved wage loss and medical benefits for

---

[2] Added by Section 22 of the Act of June 24, 1996, P.L. 350.

Claimant's October 2011 work injury. WCJ's Op., Finding of Fact (F.F.) No. 2. Further, paragraph 10 of the C&R states (with emphasis added):

> [Claimant] will receive a lump sum payment of $75,000.00, minus a 20% contingent fee. In addition, [Employer] will reimburse a BlueCross/Blue Shield lien in the amount of $3,372.00, and will reimburse $353.20 to Neurology Associates of Bucks County; $443.43 to Pain Medicine Specialists; $186.00 to Grandview Emergency Room; and $21.00 to Meadowbrook Neurology. No additional medical bills will be paid by [Employer].

Id.; R.R. at 7a. Additionally, Paragraph 16 states: "The [p]arties desire to resolve Claimant's entitlement to past, present and future indemnity, medical and specific loss benefits related to the work injury of October 14, 2011." Id. The terms of the C&R released Employer from all liability for indemnity benefits as well as medical bills provided for treatment of the October 2011 injury. F.F. No. 3.

The WCJ further found, if Provider did not receive payment for medical services provided for treatment of the October 2011 work injury, it should have complied with the fee review process set forth in the Medical Cost Containment (MCC) regulations found at 34 Pa. Code §§127.1-127.755. F.F. No. 4. The WCJ determined Provider lacked standing to seek penalties for failure to pay medical bills from which Employer was released regarding the October 2011 work injury as stated in the WCJ's November 2013 decision approving the C&R. Provider appealed to the Board.

On appeal, the Board affirmed. Provider now petitions for review to this Court.

3

## II. Issues

On appeal,[3] Provider argues the Board erred in affirming the WCJ's decision that Provider lacked standing to file a penalty petition where it lacked any other remedy under the Act. Provider further asserts the decisions of the Board and the WCJ result in a denial of Provider's right to challenge the failure to pay its duly submitted medical bills in violation of the due process clauses of the U.S. and Pennsylvania Constitutions.

## III. Discussion
### A. Contentions

Provider asserts Claimant suffered a work injury in October 2011. The injury was ultimately resolved by a C&R approved in November 2013 for lower back pain with bilateral lower extremity radiculopathy. Provider argues Claimant treated with Provider from August 2012 until September 2013, for these injuries. It contends it submitted all bills on a timely basis in accordance with applicable regulations, and Claimant's counsel received copies of the bills. Thus, Provider maintains, at the time they filed the petition seeking approval of the C&R, both Claimant's counsel and Employer's insurance carrier were aware of Provider's bills. Nonetheless, Provider argues, upon settlement of the case, Provider's bills were not paid, and Provider did not receive a denial of its bills. Rather, they were simply ignored.

---

[3] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap), 81 A.3d 830 (Pa. 2013).

4

On this record, Provider argues, it had standing to pursue the penalty petition. Provider asserts there is no issue of reasonableness or necessity of its treatment. Given that its bills were not paid pursuant to the C&R, Provider contends, it was left without a remedy as the fee review process was unavailable where Employer's liability for the work injury was never established. Thus, Provider asks that this Court reverse the Board's order and remand for the WCJ for a hearing on the merits of Provider's penalty petition.

**1. Standing/Availability of Other Remedy**

Provider first notes the WCJ found that Provider should have complied with Chapter 127 of the MCC regulations and thus lacked standing to seek penalties for failure to pay its bills. Provider points out Section 306(f.1)(5) of the Act, 77 P.S. §531(5), states:

> [T]he employer or insurer shall make payment and providers shall submit bills and records in accordance with the provisions of this section. All payments to providers for treatment provided pursuant to this act shall be made within [30] days of receipt of such bills and records unless the employer or insurer disputes the reasonableness or necessity of the treatment provided …

Provider argues that, because its bill was not paid pursuant to the C&R, it was left without a remedy as the fee review process is unavailable. It maintains the facts, had a record been permitted to be developed, would show Provider did not have the opportunity to timely file for a fee review as it was not timely advised of the refusal to pay its bills.

Although dealing with the right of a claimant to seek penalties, Provider asserts, Hough v. Workers' Compensation Appeal Board (AC&T Cos.), 928 A.2d 1173 (Pa. Cmwlth. 2007), is instructive on the alleged exclusivity of the fee review process. There, the Bureau, as *amicus curiae* in support of the claimant, argued that a fee review was not a condition precedent to an imposition of penalties. It asserted the WCJ may assess penalties for violations of the Act and such assessments should not be reversed absent an abuse of discretion. The Bureau cited Westinghouse Electric Co. v. Workers' Compensation Appeal Board (Weaver), 823 A.2d 209 (Pa. Cmwlth. 2003), which assessed a penalty for failure to timely pay medical bills even where the bills were not submitted on appropriate forms. The Court held Section 306(f.1)(5) of the Act did not require the provider to seek fee review before the claimant could proceed on a penalty petition alleging untimely payment of medical bills.

Here, Provider maintains, the Board stated the fee review process was the exclusive remedy for providers disputing the timeliness or amount of payment by employers. Provider asserts it could not have filed for a fee review here. As the Supreme Court in Crozer Chester Medical Center v. Department of Labor & Industry, 22 A.3d 189, 195-96 (Pa. 2011), stated:

> [U]nder the Act, if an insurer accepts that compensation is due for a particular treatment, a medical care provider may file an application for fee review to dispute the 'amount or timeliness' of the payment. 77 P.S. § 531(5); Catholic Health Initiatives v. Health Family Chiropractic, 720 A.2d 509, 511 (Pa. Cmwlth. 1998) (commencement of fee review process 'presupposes' that liability has been established). …

Provider argues liability was never established here. Rather, Claimant's claim petition was converted to a petition for approval of a C&R, which the WCJ approved. Provider contends there was never a time when it could file for a fee review. Provider notes the Board cited <u>Hough</u> and <u>Enterprise Rent-A-Car v. Workers' Compensation Appeal Board (Clabaugh)</u>, 934 A.2d 124 (Pa. Cmwlth. 2007). However, <u>Hough</u> involved a dispute as to the timeliness of payment as opposed to a dispute over the amount due and, similarly, the employer there did not challenge the amount due for the services provided, but rather refused payment altogether. Here, as in <u>Hough</u>, Provider maintains, the issue was failure to pay, not the amount of payment, and thus the fee review process was not a prerequisite. Provider argues it did not have the fee review process available to it and, unless able to file a penalty petition, it is left without a remedy through no fault of its own.

## 2. Due Process

Provider further argues it properly submitted the bills to Employer's insurance carrier, as well as Claimant's counsel, but when the C&R was signed and approved, the bills were ignored. Provider asserts it never received a final denial and, to date, cannot state why the bills were not paid. In effect, Provider asserts, Claimant released Employer from responsibility to pay Provider without any notice or right to be heard. If Provider lacks standing, it argues, it was deprived of its rights without any opportunity to challenge the failure to have its bills paid. This would be a clear violation of due process and contrary to the Act's purposes. Put simply, Provider contends, to find it lacks standing would leave it without a remedy with no due process despite the fact the treatment was for the area of the

body accepted by the C&R, its bills were properly submitted and its bills were not challenged as unreasonable or unnecessary.

## B. Analysis

Our decision in Lincow v. Workers' Compensation Appeal Board (Prudential Securities, Inc.), 832 A.2d 569 (Pa. Cmwlth. 2003), is instructive on the issue of a medical provider's standing to file a penalty petition. There, the claimant suffered a work injury for which the employer issued a notice of compensation payable. The employer subsequently filed a termination petition. Additionally, the claimant's treating physician filed a utilization review (UR) petition, alleging treatment he rendered to the claimant was reasonable and necessary. A WCJ denied both petitions. The provider appealed, and the employer filed a second termination petition. Thereafter, the claimant and the employer entered into a C&R, resolving the pending litigation, which released the employer from liability for any and all medical benefits. The claimant's treating physician subsequently filed a penalty petition against the employer, alleging the employer did not pay his medical bills. The WCJ denied the penalty petition concluding, among other things, the provider lacked standing to seek penalties for failure to pay medical bills that were deemed neither reasonable nor necessary. The Board affirmed.

On further appeal by the provider, this Court affirmed. In determining the provider lacked standing to file a penalty petition, we stated:

'Section 435 of the Act, 77 P.S. § 991,[4] confers power on a WCJ to award a penalty where there is a violation of the Act or the rules and regulations issued pursuant to the Act.' [Candito v. Workers' Comp. Appeal Bd. (City of Phila.), 785 A.2d 1106, 1108 (Pa. Cmwlth. 2001) (footnote omitted)]. 'However, the imposition of a penalty is at the discretion of the WCJ and is not required, even if a violation of the Act is apparent on the record.' Id.

Initially, we note that pursuant to Section 435(d)(i) of the Act, 77 P.S. § 991(d)(i), '[e]mployers and insurers may be penalized a sum.... Such penalty *shall be payable to the same persons to whom the compensation is payable*.' (Emphasis added.) In the present case, [the] [c]laimant and [the] [e]mployer entered into a July 29, 1999 [C&R] which released [the] [e]mployer from all liability for any and all medical benefits owed [the] [c]laimant under the Act. As a result, [the] [c]laimant and [the] [e]mployer had compromised the medical bills for which [the] [p]rovider seeks a penalty for [the] [e]mployer's alleged nonpayment. Consequently, [the] [p]rovider lacked standing to bring a penalty petition in September 2000 based on nonpayment of [the] [c]laimant's medical bills.

Lincow, 832 A.2d at 571 (underlined emphasis added) (footnote omitted). We further explained that the provider's medical bills were for treatment that was previously held to be neither reasonable nor necessary.

Our recent decision in Peter Schatzberg, DC v. Workers' Compensation Appeal Board (Bemis Co., Inc.), 136 A.3d 1081 (Pa. Cmwlth. 2016), appeal denied, ___ A.3d ___ (Pa., No. 147 EAL 2016, filed August 11, 2016), is also instructive. There, the claimant allegedly suffered a work injury. The employer denied liability for the injury. The claimant began treating with a

---

[4] Section 435 of the Act was added by the Act of February 8, 1972, P.L. 25.

9

provider. Thereafter, he filed a claim petition. At a WCJ hearing, the claimant amended his claim petition to seek approval of a C&R. The C&R stated it resolved wage loss and medical benefits. It further stated, in exchange for a release of all liability, the employer was required to pay the claimant a lump sum. The C&R did not require the employer to pay any of the claimant's medical bills. A WCJ approved the C&R. Thereafter, the provider filed a penalty petition, alleging the employer violated the Act by resolving the case through a C&R with the claimant without giving the provider notice and an opportunity to intervene. The provider also alleged the employer violated the Act when it did not pay the claimant's medical bills pursuant to the C&R. After a hearing, the WCJ determined the employer did not agree to pay medical bills incurred as a result of the alleged work injury. The WCJ concluded the provider did not establish the employer was required to pay the claimant's medical bills because the C&R did not obligate the employer to do so. As such, the WCJ denied the provider's penalty petition. The Board affirmed. The provider appealed to this Court, arguing the employer's failure to pay the claimant's medical bills in accordance with the C&R violated the Act. Rejecting this assertion, we explained (with emphasis added):

> Section 449(b) of the Act provides that an employer or insurer may submit a proposed [C&R] stipulated to by both parties to the WCJ for approval. 'The agreement must be explicit with regard to the payment, if any, of reasonable, necessary and related medical expenses.' Id. Here, [the] [e]mployer and [the] [c]laimant entered into a [C&R] that was approved by the WCJ. The [C&R] stated that it was not an admission of liability by [the] [e]mployer. Additionally, the [C&R] did not require [the] [e]mployer to pay any past or future medical expenses. Thus, contrary to [the] [p]rovider's assertion, nothing in the [C&R] obligates [the] [e]mployer to pay [the] [c]laimant's medical expenses. …

10

> Here … [the] [e]mployer denied that [the] [c]laimant suffered a work injury and never admitted liability. Further, there was no finding or adjudication that [the] [c]laimant's injury was work-related. Thus, [the] [e]mployer was not obligated at any time to pay [the] [c]laimant's medical bills.

Schatzberg, 136 A.3d at 1084 (citation and footnotes omitted).

In accordance with Lincow and Schatzberg, we discern no error in the WCJ's dismissal of Provider's penalty petition here for several reasons. First and foremost, pursuant to Lincow, a medical provider lacks standing to file a penalty petition where, as here, a claimant and an employer enter into a C&R that releases the employer from liability for medical benefits owed to a claimant. In its brief to this Court, Provider neither mentions nor attempts to distinguish Lincow.

In addition, as the WCJ found here, Claimant and Employer entered into an approved C&R, which stated (emphasis added):

> [Claimant] will receive a lump sum payment of $75,000.00, minus a 20% contingent fee. In addition, [Employer] will reimburse a Blue Cross/Blue Shield lien in the amount of $3,372.00, and will reimburse $353.20 to Neurology Associates of Bucks County; $443.43 to Pain Medicine Specialists; $186.00 to Grandview Emergency Room; and $21.00 to Meadowbrook Neurology. No additional medical bills will be paid by [Employer].

F.F. No. 2; R.R. at 7a. Also, paragraph 16 of the C&R states: "The [p]arties desire to resolve Claimant's entitlement to past, present and future indemnity, medical and specific loss benefits related to the work injury of October 14, 2011." F.F. No. 2 (emphasis added); R.R. at 8a. The terms of the C&R released Employer from all liability for indemnity benefits as well as medical bills provided for treatment of

11

the October 2011 injury (except those specifically enumerated above). F.F. No. 3. Further, Employer did not admit liability through execution of the C&R. R.R. at 10a. As such, the C&R did not require Employer to pay Provider's medical bills. Thus, contrary to Provider's assertions, Employer did not violate the Act so as to warrant imposition of a penalty by not paying Provider's bills. Schatzberg.

Nevertheless, Provider contends it is left without a remedy under the Act because the fee review process is unavailable where Employer's liability for the work injury was never established in light of the fact that Claimant's claim petition was pending before the WCJ when the parties sought and obtained approval of the C&R. R.R. at 3a, 15a; see Catholic Health Initiatives, 720 A.2d at 511 ("Clearly, the fee review process presupposes that liability has been established, either by voluntary acceptance by the employer or a determination by a [WCJ]. If the employer does not voluntarily accept liability, then the proper course is for the employee to file a claim petition, even if the claim is limited to reimbursement for medical bills. The [MCC] regulations were not intended to allow providers to litigate the issue of an employer's liability in cases where the employee has not elected to do so.") (emphasis added) (citation omitted).[5] We disagree that Provider is without a remedy here.

---

[5] Provider cites Hough v. Workers' Compensation Appeal Board (AC&T Cos.), 928 A.2d 1173 (Pa. Cmwlth. 2007), for the proposition that a medical provider is not required to seek fee review before a *claimant* can proceed on a penalty petition alleging untimely payment of medical bills. Here, however, the penalty petition was filed by *Provider*, not Claimant. Thus, Hough does not support Provider's position.

12

In particular, while the Act prohibits a provider from "hold[ing] an employe[e] liable for costs related to care or service in connection with a compensable injury[,]"[6] it does not preclude a provider from billing an employee (or his primary health insurance company) for care related to a condition that was never deemed compensable under the Act. See David B. Torrey & Andrew E. Greenberg, 8 WORKERS' COMPENSATION LAW & PRACTICE §16:50 (3rd ed.) ("A provider with a legitimate bill … may well have the right to recover against claimant … under certain circumstances, despite a C&R between employee and employer.")[7] Indeed, Provider does not assert otherwise. Thus, although Provider may not have a remedy under the Act, it is not, as it claims, without recourse.

For the foregoing reasons, we affirm.

_____
ROBERT SIMPSON, Judge

---

[6] See Section 306(f.1)(7) of the Act, 77 P.S. §531(7) (emphasis added).

[7] If, on the other hand, liability for Claimant's injury had been established by Employer's voluntary acceptance or a determination by a WCJ, the fee review process would enable Provider to seek review of the amount or timeliness of payment of its bills for treatment of Claimant's injury (had it been deemed compensable). See, e.g., Crozer Chester Med. Ctr. v. Dep't of Labor & Indus., 22 A.3d 189 (Pa. 2011).

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

American Body Care, :
                       Petitioner :
                       :
        v. : No. 24 C.D. 2016
                       :
Workers' Compensation Appeal :
Board (Kmart Corporation and :
Sedgwick Management Services), :
                  Respondents :

## O R D E R

AND NOW, this 2nd day of September, 2016, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.

 

 

                                 _____

                                 ROBERT SIMPSON, Judge