**PITTSBURGH MERCY HEALTH SYSTEM, Petitioner**

v.

**BUREAU OF WORKERS' COMPENSATION, FEE REVIEW HEARING OFFICE (US STEEL CORPORATION), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 9, 2009.

Decided May 29, 2009.

Ordered for Publication Aug. 25, 2009.

Michael D. Sherman, Pittsburgh, for petitioner.

Anita E. Reno, Pittsburgh, for respondent.

BEFORE: LEADBETTER, President Judge, SIMPSON, Judge, FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Pittsburgh Mercy Health System (Provider) petitions for review of the October 2, 2008, order of the Bureau of Workers' Compensation (Bureau), Fee Review Hearing Office, which dismissed as untimely Provider's Application for Fee Review (Application) pursuant to section 306(f.1)(5) of the Workers' Compensation Act (Act).[1] We affirm.

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 531(5). This section provides, in relevant part:

On November 21, 2006, Provider billed U.S. Steel Corporation (Employer) in the amount of $734,393.38 for services Provider rendered to Employer's employee Robert Jocz (Claimant). In support of its claim, Provider mailed Employer the documents required by section 306(f.1)(2) of the Act,[2] a detailed billing statement with 122 pages of line item entries and Claimant's medical records. Employer informed Provider that its "repricer," MCMC, was auditing Provider's charges. At no time during the audit did Employer or MCMC request any additional documentation from Provider. (Hearing Officer's Findings of Fact, Nos. 1–5.)

On December 27, 2006, Provider received an "Audit Summary" and "Explanation of Review" (EOR) from Employer, in which Employer advised Provider that Employer was denying the claim in part. The EOR explained that the audit revealed a lack of documentation in Claimant's records to support some of the charges and that Employer would pay Provider $499,375.26 for the approved services. The EOR also included the following notice: "*If you feel you have been paid incorrectly or untimely, you may file a Fee Review with the Bureau of Workers' Compensation.*" (R.R. at 296a) (emphasis added). Shortly thereafter, Provider received a check for $499,375.26 from Employer.

(Hearing Officer's Findings of Fact, Nos. 6–9.)

After learning of Employer's decision, Marcia Foster, a senior account representative for Provider, collected additional documentation to support the disputed charges and, on January 8, 2007, contacted Employer to see if it would reconsider the denied charges if Provider sent the additional documentation. A "Kathy" advised Foster to send any additional documentation to Valerie Smarra, an employee in Employer's medical department, and Foster did so. Between January 22, 2007, and March 15, 2007, Foster followed up on her reconsideration request by contacting various representatives from Employer and MCMC. On March 15, 2007, a representative from MCMC informed Foster that MCMC was declining to reprocess Provider's claim because the claim already had been reviewed in a line-by-line audit. (Hearing Officer's Findings of Fact, Nos. 10–13.)

■ On March 30, 2007, Provider filed the Application, disputing the amount paid by Employer. (Hearing Officer's Findings of Fact, No. 14.) However, the Bureau denied Provider's Application as untimely. Provider appealed, and a hearing on the timeliness of the Application was held before a hearing officer, at which Provider

A provider who has submitted the reports and bills required by this section and who disputes the amount or timeliness of the payment from the employer or insurer shall file an application for fee review with the department no more than thirty (30) days following notification of a disputed treatment or ninety (90) days following the original billing date of treatment.

77 P.S. § 531(5). Providers receive the benefit of using whichever is the later date. 34 Pa.Code § 127.252(a).

**2.** Section 306(f.1)(2) of the Act states, in relevant part, that any provider that treats an injured employee is required to file periodic reports with the employer on forms prescribed by the Department of Labor and Industry (Department), which shall include, where pertinent, history, diagnosis, treatment, prognosis and physical findings. 77 P.S. § 531(2). An employer is not liable to pay for such treatment until a report has been filed. *Id.;* 34 Pa.Code § 127.203 (stating that medical reports shall be submitted on a form prescribed by the workers' compensation bureau and that the insurer is not obligated to pay for treatment covered by a report unless the provider submits the reports on the prescribed form).

presented Foster's testimony and documentary evidence.[3]

Foster testified about the processing of Provider's claim and about her ongoing communications with Employer and MCMC between January 8, 2007, and March 15, 2007. Foster explained that, during these conversations, neither Employer nor MCMC stated that they would not reconsider Provider's claim but, instead, indicated that the request was under review. Foster stated that she only knew Provider's claim finally had been denied on March 15, 2007, and that she filed the Application within thirty days of that date. However, Foster acknowledged that it was Employer's dispute of Provider's claim in the EOR that prompted her to contact Employer on January 8, 2007. (Hearing Officer's Findings of Fact, Nos. 12–15.)

The hearing officer credited Foster's testimony in part but rejected her testimony that Provider first knew its claim was disputed on March 15, 2007. The hearing officer found this testimony was inconsistent with Foster's statement that she became aware of Employer's dispute of the claim in the EOR and with Provider's January 8, 2007, letter to Employer, in which Provider states that it is submitting the additional documents to support the "denied line items." (R.R. at 299a.) Moreover, the hearing officer found that the record did not support Provider's contention that Employer's representations and statements lulled Provider into deferring its fee review application. Accordingly, the Bureau denied Provider's appeal and dismissed the Application as untimely. Provider now petitions this court for review.[4]

■ Provider first argues that its Application was timely under the Act because it was submitted within thirty days of March 15, 2007, the date Provider received *final* notification that Employer was disputing a portion of Provider's claim.[5] However, section 306(f.1)(5) of the Act states that an application for fee review must be filed "no more than thirty (30) days following *notification* of a disputed treatment. . . ." 77 P.S. § 531(5) (emphasis added). There is nothing in the plain language of section 306(f.1)(5) that supports the assertion that "notification" means "final notification."[6]

In making this argument, Provider relies primarily on Foster's testimony that this was the day when she finally knew that Employer was disputing certain charges and would not reconsider. However, the hearing officer did not credit Foster's testimony that March 15, 2007, was the day Provider *knew* Employer was disputing the charges. Matters of credibility and evidentiary weight in workers' compensation matters are within the sole discretion of the fact finder, and we will

---

3. The provider bears the burden of proving that its application for fee review was timely filed. *Thomas Jefferson University Hospital v. Bureau of Workers' Compensation Medical Fee Review Hearing Office*, 794 A.2d 933 (Pa. Cmwlth.2002).

4. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

5. Provider concedes that its Application was not filed within ninety days of its original billing date.

6. Where the words of a statute are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of following its spirit. Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b).

not reweigh the evidence or substitute our credibility determinations for those of the hearing officer. *Laundry Owners Mutual Liability Insurance Association v. Bureau of Workers' Compensation (UPMC)*, 853 A.2d 1130 (Pa.Cmwlth.2004). Thus, Provider's argument necessarily fails.

Provider next asserts that the thirty days did not begin to run until March 15, 2007, because that was the day Employer disputed Provider's "resubmitted bill," Provider's characterization of its submission of additional documents. Provider maintains that the rationale in *Harburg Medical Sales Company v. Bureau of Workers' Compensation (PMA Insurance Company)*, 784 A.2d 866 (Pa.Cmwlth. 2001), supports the conclusion that its Application was timely. Again, we disagree.

In *Harburg*, the provider submitted a bill to insurer, which insurer denied because the provider failed to comply with the statutory reporting requirements of the Act. The provider's subsequent application for fee review was denied for lack of standing. Thereafter, the provider resubmitted a bill to the insurer that complied with the Act, which the insurer again denied. When the provider applied for fee review based on the denial of the resubmitted bill, the application was dismissed as untimely. On appeal to this court, the provider argued that the insurer's obligation to pay the claim arose only *after* it submitted a bill that complied with the Act's reporting requirements, 77 P.S. § 531(2), 34 Pa.Code § 127.203, and, therefore, the statutory time period for filing its fee review was linked to the resubmitted,

rather than the original, bill. The court agreed, stating that to hold otherwise would "leave the provider without any recourse to seek payment for a disputed treatment if the provider is barred from resubmitting a bill that has gone through the fee review process and denied on the basis of failure to comply with the reporting requirements...." *Harburg*, 784 A.2d at 870.

■ *Harburg* is readily distinguishable. Unlike the situation in *Harburg*, Employer here did not allege that Provider failed to comply with the Act's reporting requirements and did not dispute Provider's bill on this basis.[7] There is no question that Employer's obligation to pay Provider was triggered by the November 21, 2006, bill; in fact, Employer *paid* Provider the undisputed portion of that bill. Moreover, because Provider submitted its bill in accordance with the reporting requirements of the Act, Provider here, unlike the provider in *Harburg*, was not left without recourse to seek payment. Provider had standing to challenge the amount of Employer's December 2006 payment using the fee review process, but instead chose to seek additional payment outside the fee review process.

Provider next argues that it was lulled into a false sense of security regarding the status of Employer's dispute based on the representations of employees of Employer and MCMC that they were reviewing the additional documents sent by Provider. Thus, according to Provider, Employer should be estopped from arguing that Pro-

---

7. Moreover, even if Provider's claim did not comply with the Act's reporting requirements until Provider resubmitted its claim, Provider's Application would not be timely. In *Hospital of the University of Pennsylvania v. Bureau of Workers' Compensation (Tyson Shared Services, Inc.)*, 932 A.2d 1010 (Pa.Cmwlth. 2007), *appeal denied*, 596 Pa. 735, 945 A.2d 173 (2008), we held that a provider may not rely on its own non-compliance with the Act's reporting requirements to extend the time period to file a fee review application where, notwithstanding the provider's non-compliance, the employer/insurer makes payment, and the only matter disputed is the amount paid.

vider's Application was untimely. Again, we disagree.

■ The doctrine of equitable estoppel applies in situations where a party, through its acts, negligently misrepresents material facts while knowing or having reason to know that the party will justifiably rely on the misrepresentation to its detriment and the other party does so rely.[8] *Sharon Steel Corporation v. Workmen's Compensation Appeal Board (Myers),* 670 Å.2d 1194 (Pa.Cmwlth.), *appeal denied,* 544 Pa. 679, 678 A.2d 368 (1996). The record here cannot support Provider's equitable estoppel claim.

■ Employer notified Provider that any dispute should be handled through the fee review process, but Provider chose to submit additional documents and request reconsideration of the denied charges. Foster testified that Employer and MCMC indicated that they would review Provider's request; however, Foster did not testify that she advised Employer or MCMC that Provider was delaying the filing of the fee review application until Employer responded to Provider's reconsideration request. Moreover, Provider did not indicate as much in the letter accompanying the additional documents sent to Employer. Absent this knowledge, Employer could not know or have reason to know that Provider was relying on its or MCMC's representations to Provider's detriment, and the Bureau properly rejected Provider's contention.

Accordingly, we affirm.

### ORDER

AND NOW, this 29th day of May, 2009, the order of the Bureau of Workers' Com-

pensation Fee Review Hearing Office, dated October 2, 2008, is hereby affirmed.

---

**8.** Whether the facts in a particular case rise to the application of equitable estoppel is a question of law which can be addressed by this court on appeal. *Sharon Steel Corporation v.*