**Sanjay GUPTA, M.D., Petitioner**

v.

**BUREAU OF WORKERS' COMPENSATION FEE REVIEW HEARING OFFICE (Erie Insurance Co.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 11, 2013.

Decided Nov. 21, 2013.

James J. Hollawell, Newtown, for petitioner.

Thomas A. Rothermel, Wyomissing, for respondent Erie Insurance Co.

BEFORE: McGINLEY, Judge, BROBSON, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

Sanjay Gupta, M.D. (Provider) petitions for review of the decision of the Fee Hearing Officer of the Bureau of Workers' Compensation Fee Review Office (Bureau) affirming a determination by the Workers' Compensation Medical Fee Review Section that Provider's Application for Fee Review (Application) was properly denied due to untimeliness under Section 306(f.1)(5) of the Pennsylvania Workers' Compensation Act (Act).[1] 77 P.S. § 531(5). We affirm.

On May 28, 2010, Provider treated a workers' compensation claimant with Therapeutic Magnetic Resonance (TMR). (Medical Fee Review Hearing Decision Finding of Facts (F.F.) ¶ 3.) On June 25, 2010, Provider billed the claimant's workers' compensation carrier, Erie Insurance Company (Erie), for the procedure in the amount of $3,298.00. (*Id.*) On October 20, 2011, over a year after Provider submitted its bill to Erie, Provider filed an Application, which was denied on October 27, 2011 by the Workers' Compensation Medical Fee Review Section because the Application was not filed within the time limits prescribed by Section 306(f.1)(5) of the Act.[2] (F.F.¶ 4.) Provider appealed the deni-

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708. Section 306(f.1) *added by* Act of July 2, 1993 P.L. 190.

2. Section 306(f.1)(5), 77 P.S. § 531(5), provides:

    The employer or insurer shall make payment and providers shall submit bills and records in accordance with the provisions of this section. All payments to providers for treatment provided pursuant to this act shall be made within thirty (30) days of receipt of such bills and records unless the employer or insurer disputes the reasonableness or necessity of the treatment provided pursuant to paragraph (6). The non-payment to providers within thirty (30) days for treatment for which a bill and records

al and requested a *de novo* hearing before the Bureau.

The sole issue before the Bureau was the status of the bill Provider submitted to Erie between June 25, 2010 and October 20, 2011, when Provider submitted the Application. Provider presented the testimony of Beth Sharkey (Sharkey) and Erie presented the deposition testimony of Roxane Lombardi (Lombardi); both parties also submitted documentary evidence. (F.F. ¶¶ 5–7.) As a result, the Bureau made the following findings of fact:

5. In support of the underlying determination, [Erie] presented the testimony of [Lombardi], the bill review manager for Corvel Corporation, a medical bill repricing company for [Erie]. [Lombardi's] testimony may be stated as follows:

(a) Corvel processes all workers' compensation medical bills for [Erie].

(b) She is familiar with the medical bills in this matter because Corvel processed the Provider's bill of June 25, 2010 for date of service of May 28, 2010 for the amount of $3,298.00 for APT code 76498. Code 76498 is designated as "unlisted MRI".

(c) Corvel received the Provider's bill, accompanied by medical notes on July 9, 2010, and reviewed same. Based upon a review, Corvel denied the bill as experimental, as per the Medicare guidelines. **The denial was communicated to the Provider.**

(d) She received the same bill, with the same attached documentation, for the date of service of May 28, 2010, fourteen months later, on September 12, 2011. The bill was denied a second time.

(e) She received the same bill again, with the same attached documentation a third time, on October 27, 2011. Corvel denied the bill again.

(f) On cross examination, Ms. Lombardi was questioned about a conversation that occurred on September 29, 2010 between a billing clerk for the provider and Susan Ketterer, the adjuster on the file at [Erie], regarding the denial by Corvel of payment, and the EOB's[3] dated July 9, 2010.

6. The Provider presented the testimony of [Sharkey], a billing supervisor for East Coast, TMR. East Coast TMR is responsible for the billing and collections for TMR treatments. [Sharkey's] testimony may be stated as follows:

(a) The Provider rendered TMR treatments on two dates of service: May 14, 2010 and May 28, 2010. Pay-

---

have been submitted shall only apply to that particular treatment or portion thereof in dispute; payment must be made timely for any treatment or portion thereof not in dispute. A provider who has submitted the reports and bills required by this section and who disputes the amount or timeliness of the payment from the employer or insurer shall file an application for fee review with the department no more than thirty (30) days following notification of a disputed treatment or ninety (90) days following the original billing date of treatment. If the insurer disputes the reasonableness and necessity of the treatment pursuant to paragraph (6), the period for filing an application for fee review shall be tolled as long as the insurer has the right to suspend pay-

ment to the provider pursuant to the provisions of this paragraph. Within thirty (30) days of the filing of such an application, the department shall render an administrative decision.
*See also* 34 Pa.Code § 127.252(a) (an Application "shall be filed no more than 30 days following notification of a disputed treatment or 90 days following the original date of the treatment which is the subject of the fee dispute, whichever is later.")

3. The initials EOB stand for "Explanation of Benefit." The term EOR, or "Explanation of Review", was used interchangeably with EOB by the parties below.

ment for the date of service of May 14, 2010 was received; no payment has been received for the date of service, May 28, 2010.

(b) She received an EOB dated July 22, 2010 indicating that Corvel was denying payment on September 11, 2011.[4]

(c) She resubmitted the bill a second time, on September 12, 2011 and it was again denied.

(d) She resubmitted the bill for the date of service of May 28, 2010 again on October 27, 2011 and again it was denied.

(f) An [Application] was filed on October 21, 2011.

7. This hearing officer has reviewed the documentary evidence, and considered the testimony, and finds no basis to disturb the administrative determination that Provider's application for fee review was not timely filed.

8. This is based upon the persuasive testimony of [Lombardi] that the bills for treatment date of May 28, 2010 were promptly reviewed and timely denied. An EOB is dated July 22, 2010. The testimony of Beth Sharkey that the denial, the EOB, was received by the Provider on September [23], 2011 is not trustworthy.[5] **During the cross examination testimony of [Lombardi],** **the Provider admits engaging in a conversation regarding the denial of payment with the claims adjuster on September 29, 2010.**

9. Based upon the foregoing, credible evidence of record confirms that the administrative decision of the Bureau to deny the Provider's Application for Fee Review for untimeliness under Section 306 [ (f.1) ] (5) of the Act was proper.

(F.F. ¶¶ 5–9 (emphasis added).)

■ Before this Court, Provider disputes the Bureau's findings of fact in several respects.[6] Where findings of fact are not supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, those findings cannot stand on appeal; however, matters of credibility, the resolution of conflicts in the evidence, and questions of evidentiary weight are within the sole discretion of the fact-finder and this Court will not reweigh evidence or substitute its own credibility determinations for that of the Bureau. *Pittsburgh Mercy Health System v. Bureau of Workers' Compensation Fee Review Hearing Office (U.S. Steel Corp.),* 980 A.2d 181, 185 (Pa.Cmwlth. 2009).

■ In finding of fact 5, the Bureau discussed the relevant testimony of Lombardi, which the Bureau credited in finding

---

4. The EOB has an approval date of September 12, 2011, not September 11, 2011. (Lombardi Deposition, November 12, 2012 Exhibit 1, R.R. at 23a.)

5. The testimony was that the EOB was received on September 23, 2011. (February 15, 2013, Hearing Transcript, Sharkey Testimony at 12–13.) The date on the time and date stamped envelope from Provider's lockbox is September 20, 2011. (P1–3, Time Stamped Envelope, R.R. at 62a.) In the finding of facts, the Bureau mistakenly states that Sharkey testified that the EOB was received on September 11, 2011.

6. This Court's scope of review of a fee review decision by the Bureau is limited to considering whether necessary factual findings are supported by substantial evidence, whether the hearing officer erred as a matter of law, and whether any constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Legion Insurance Company v. Bureau of Workers' Compensation Fee Review Hearing Office (Ferrara),* 42 A.3d 1151, 1153 n. 6 (Pa.Cmwlth.2012).

of fact 8. Provider argues that Lombardi's testimony cannot support the statement contained in finding of fact 5(c) that "the denial was communicated to the Provider," and that it was error for the Bureau to rely on Lombardi's testimony to support this statement.

On direct, Lombardi was asked by counsel for Erie, "[s]o the denial was communicated to the provider on July 9th 2010. It was denied by your office on the 9th of 2010; correct," and she answered, "[t]hat's correct." (Lombardi Deposition, November 12, 2012 (Lombardi Dep.) at 12.) On cross-examination by Provider's attorney, Lombardi testified that the Explanation of Benefits (EOB) denying Provider's fee was sent to Erie, rather than directly to Provider. (Lombardi Dep. at 16–17.) Lombardi's specific testimony on cross-examination was as follows:

Q. ... Ma'am in July of 2010 the bills, you said, were denied as experimental and investigational; correct?

A. Correct.

Q. And do you know who those EOB's were sent to?

A. We give them to [Erie].

Q. Do you know who [Erie] sent them to?

A. No, I do not.

(Lombardi Dep. at 16.) On cross-examination, Provider's attorney clearly established that the denial was communicated to Erie and not to Provider directly. (Lombardi Dep. at 16.) This is not an instance of conflicting testimony, but an example of clear, unambiguous testimony that the denial went from Corvel to Erie in July of 2010, and what happened afterward was unknown to the witness. The statement in finding of fact 5(c) that the denial was communicated to Provider in July 2010 is unsupported by the testimony of Lombardi and must be stricken.

■ Next, Provider argues that the Bureau's determination in finding of fact 8 that Sharkey's testimony that she received the July 22, 2010 EOB on September 23, 2011 was not trustworthy is against the weight of the evidence. In support of this argument, Provider contends that the finding is based on a date contained in a question Provider's attorney asked Lombardi during cross-examination, which cannot be construed as an admission, and is evidence of nothing. (Lombardi Dep. at 17.) Provider also disputes the Bureau's credibility determination on the basis that Sharkey's testimony is supported by Provider's use of a lockbox at a Wells Fargo bank to receive, screen, and time stamp all of its mail, contending that no correspondence from Erie was screened into its lockbox in July of 2010.

■ Addressing Provider's second contention first, much as we could not assume from Lombardi's testimony that the EOB sent to Erie was then sent to Provider, we cannot conclude that the absence of any records from Provider's lockbox, aside from the single date-stamped envelope, is evidence of the absence of the denial. However, we do find merit in Provider's argument that the Bureau erroneously construed a question by Provider's attorney as factual evidence. The exchange at issue between Provider's counsel and Lombardi is as follows:

Q. Do you know who Susan Ketterer, K–E–T–T–E–R–E–R, is?

A. She is the adjuster on the file.

Q. From Erie Insurance Group?

A. Correct.

Q. Are you aware of a conversation that Ms. Ketterer had with one of the billing clerks from East Coast TMR, Incorporated, on September 29 of 2010?

A. No.

Q. Are you aware that East Coast TMR advised Erie Insurance Group that they never received the initial denials or experimental investigational treatment based on the July 9, 2010 [EOBs]?

A. No.

Q. You are aware that there was no action taken on either bill for dates of service 5/14/2010 and 5/28/2010 until they were resubmitted in September of 2011; correct?

A. I don't understand your question.

Q. Other than what we have already discussed, there was no additional action taken on these bills by Corvel or Erie Insurance Group, to your knowledge, until they were submitted for reconsideration in September of 2011; correct?

A. That's correct.

(Lombardi Dep. at 17.) Based on this exchange, the Bureau found that "During the cross examination testimony of Ms. Lombardi, the Provider admits engaging in a conversation regarding the denial of payment with the claims adjuster on September 29, 2010." (F.F. ¶ 8.) A question by counsel is not testimony. Even if the question could be construed as an admission that a conversation took place, the content of the question does not provide a basis upon which to infer the content of the conversation. Lombardi admitted to no knowledge of the conversation alluded to in the question; her lack of knowledge can offer no proof beyond the simple fact that she lacked knowledge. Therefore, we conclude that the statement contained in finding of fact 8 that "the Provider admits

in engaging in a conversation regarding the denial of payment with the claims adjuster on September 29, 2010," is unsupported by the record and must be stricken.

■■ Petitioner contends that without the statements in findings of fact 5(c) and 8, the Bureau's decision is not supported by substantial competent evidence. We disagree. When a dispute arises regarding the timeliness of an Application for Fee Review, the burden of proof is on the provider to show that the Application was timely filed. *Thomas Jefferson Hospital v. Bureau of Workers' Compensation Medical Fee Review Hearing Office,* 794 A.2d 933, 936 (Pa.Cmwlth.2002); *see also* 34 Pa.Code § 127.252(a). Here, Provider failed to meet this burden. While it is clear from the testimony that Lombardi had no knowledge of the EOB after it was sent to Erie, the burden was not on Erie to show that it sent the EOB to Provider at or around July 22, 2010; the burden was on Provider to show that Erie did not send the EOB at or around July 22, 2010. In order to meet this burden, Provider offered the testimony of Sharkey and through Sharkey's testimony sought to introduce and demonstrate the relevance of the time and date stamped envelope from Provider's lockbox. The Bureau did not find Sharkey's testimony credible and we are bound by that determination.[7] As a result, Provider failed to establish that his Application was timely filed.

■ In the alternative, Petitioner argues that even if the July 2010 EOB trig-

---

**7.** Under Section 422(a) of the Act, 77 P.S. § 834, when a workers' compensation judge (WCJ), as opposed to the Bureau, makes a credibility determination, the WCJ is held to the "reasoned decision" standard. In *Daniels v. Workers' Compensation Appeal Board (Tristate Transport),* 574 Pa. 61, 828 A.2d 1043 (2003), our Supreme Court explained that even under this heightened standard, where

credibility determinations are based on assessments of witnesses' demeanor, a simple declaration as to whether the witness was credible would suffice. Thus, even if we applied the heightened reasoned decision standard here, we would still be bound by the Bureau's rejection of Sharkey's testimony as untrustworthy.

gered the clock for filing a timely Application, the Application here should still be considered timely, because the EOB sent to Provider in September 2011 altered Erie's position for denying payment and therefore restarted the 30 day window in which Petitioner had to file the Application. Provider contends that *Harburg Medical Sales Co. v. Bureau of Workers' Compensation (PMA Insurance Company)*, 784 A.2d 866, 870 (Pa.Cmwlth.2001), should guide our analysis here and that an amended EOB should be treated the same as a denial of payment due to a lack of statutorily mandated documentation. We disagree.

In *Harburg*, this Court held that where a provider has submitted a bill to an insurer that is denied for failure to include the documentation required under the Act, if the provider resubmits the bill with the proper documentation and the insurer again denies the bill, the provider has 30 days following the notification of the denial of the properly documented bill to seek review of the fee dispute. Our holding in *Harburg* was rooted in the conclusion that under:

> Section 306(f.1) and the accompanying regulations as a whole, it is clear that an employer or its insurer is not liable to pay for any treatment to an injured employee until the provider of the treatment forwards the required reports to employer. It is equally clear that only a provider who has submitted the required reports and bills to an insurer has standing to seek review of the fee dispute by filing an application for fee review. *See* Section 306(f.1)(5) of the Act and 34 Pa.Code § 127.251.[ ] This requirement reinforces the requirement found in Section 306(f.1)(2) that an employer shall not be liable to pay for treatment until

> the mandated reports have been filed with the employer.

784 A.2d at 869–870 (n.5 omitted).

Provider's reading of Section 306(f.1)(5) of the Act is at odds with our analysis in *Harburg* and the text of the statute. Unlike the provider in *Harburg*, here Provider was left with an available recourse; having submitted the statutorily mandated documentation with the June 25, 2010 bill, Provider gained standing to file an application and could have sought review of Erie's action or inaction within 90 days of the original billing date of treatment. Provider chose to take no action. Provider's lack of action is akin to that of the provider in *Pittsburgh Mercy Health System.* In *Pittsburgh Mercy Health System*, the provider submitted a properly documented bill to the insurer and the insurer paid the claim in part and rejected the claim in part. 980 A.2d at 183. Although the provider in *Pittsburgh Mercy Health System* had gained standing to file an application under our holding in *Harburg*, upon receiving the partial denial the provider chose instead to seek additional payment from the insurer outside of the fee review process. *Pittsburgh Mercy Health System*, 980 A.2d at 185. When the provider later filed an application, it was rejected because the application was filed more than 30 days after the partial payment. *Id.*

Here, in addition to taking no action within the 30 days following notification of the zero payment for the treatment rendered on May 28, 2010, Provider also failed to act within the 90 day window following the original date of treatment. If we were to embrace Provider's reading of the Act, the 30 and 90 day windows provided in the statute would be rendered mere surplusage, as a provider could simply submit the same bill *ad infinitum* with the hope that the insurer may treat it differently in the

future, however distant. Section 306(f.1)(5) does not allow a provider to open another 30 day window simply by resubmitting a properly documented bill that has already been denied; the regulation promulgated under the Act allowing a provider the greater of the 30 day or 90 day window, 34 Pa.Code § 127.252(a), offers providers a fair opportunity to seek review of an insurer's action, but neither the statutory text nor the regulations relieve providers of the duty to seek redress from the fee review process in a timely fashion.

Under Section 306(f.1)(5) of the Act, Provider's Application was properly denied as untimely. The order of the Bureau is affirmed.

## *ORDER*

AND NOW, this 21st day of November, 2013 the order of the Fee Review Hearing Officer of the Bureau of Workers' Compensation Fee Review Office in the above-captioned matter is AFFIRMED.