IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank Hughes,                                    :
                        Petitioner               :
                                                 :    No. 826 C.D. 2021
            v.                                   :
                                                 :    Submitted: December 30, 2021
Wawa, Inc. (Workers'                             :
Compensation Appeal Board),                      :
                        Respondent               :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                              FILED: August 8, 2022


         Frank Hughes (Claimant) seeks review of the July 8, 2021 order of the
Workers' Compensation Appeal Board (Board), which affirmed the Workers'
Compensation Judge's (WCJ) denial of his penalty petition and the partial termination
petition filed by Wawa, Inc. (Employer).  Upon review, we affirm.

                    I.    **Factual and Procedural History**

         On May 1, 2000, Claimant sustained a work-related injury while working
as a truck driver for Employer.  On August 24, 2011, the parties entered into a
Compromise and Release (C&R) Agreement approved by the WCJ resolving wage loss
benefits and describing Claimant's compensable injuries as low back herniated discs,
anxiety, depressive state, and pain disorder.  The medical portion of Claimant's claim
remained open.

**A. 2018 UR Requests Pertaining to Prescriptions of Oxycontin**

In 2018, Employer filed two Utilization Review (UR) requests to determine whether certain prescriptions for Oxycontin provided to Claimant by Dr. Robert Sing and Dr. Christopher Davis were reasonable and necessary. In a UR determination circulated on May 15, 2018, the WCJ found that Employer had met its burden of proof to establish that there should be modifications and limitations of the Claimant's office visits and prescriptions for Oxycontin provided to Claimant by Dr. Davis. The WCJ credited Employer's expert testimony that a reduction of Oxycontin was necessary along with the expectations of a reduction over time. The WCJ concluded the following treatment of Dr. Davis to be unreasonable and unnecessary from April 12, 2018, and ongoing: routine office visits more frequently than once per month, Oxycontin 60 mg at noon, and Oxycontin 80 mg 1 tablet every 12 hours.

Relatedly, the WCJ circulated a UR determination regarding the treatment of Dr. Sing, which concluded that the following treatment was unreasonable and unnecessary: Oxycontin 80 mg once every 12 hours, and Oxycontin 30 mg one twice per day beyond June 7, 2019.

Claimant filed an appeal of the determinations of the WCJ to the Board, which affirmed. On December 13, 2021, this Court issued an opinion and order affirming the Board's order. *See Hughes v. Wawa (Workers' Compensation Appeal Board)*, 271 A.3d 922, 925 (Pa. Cmwlth. 2021).

**B. Employer's Partial Termination Petition – Psychological Only**

Meanwhile, on August 12, 2019, Employer filed a petition for partial termination of benefits, seeking termination of benefits related only to the psychological component of Claimant's work injury based on the full recovery opinion

2

of psychiatrist Dr. Larry Rotenberg. (Reproduced Record (R.R.) at 1a-2a.) In support of its partial termination petition, Employer presented the deposition testimony of Dr. Rotenberg, who had performed an independent psychiatric evaluation of Claimant on May 15, 2019. Dr. Rotenberg's evaluation took place over two hours during which Claimant was administered a battery of psychological tests. Ultimately, Dr. Rotenberg determined that Claimant had fully recovered from his accepted psychological injuries, which occurred nearly 20 years earlier. Dr. Rotenberg explained that an adjustment disorder, per the Diagnostic and Statistical Manual, generally lasts three months and may be extended to six months. *Id*. at 63a. He further opined Claimant's ongoing issues and need for ongoing psychiatric treatment were totally unrelated to his work injury. *Id*. at 64a-65a.

On cross-examination, Dr. Rotenberg testified it was his understanding that Claimant's work-related psychiatric diagnosis was an adjustment disorder. *Id*. at 70a. He agreed there are several classifications of depression in the Diagnostic and Statistical Manual, including major depression, dysthymic disorder, and adjustment disorder with depressed mood. He added that no depression, adjustment disorder, or dysthymic disorder lasts for 20 years. Dr. Rotenberg's opinions did not change following cross-examination. *Id*. at 99a.

On October 23, 2019, the WCJ conducted a hearing on Employer's partial termination petition. Claimant testified that he regularly sees Dr. Singh and Dr. Jacques Lipitz and was prescribed Amitriptyline for his depression and anxiety symptoms. *Id*. at 202a-16a. He testified that his anxiety and depression are exacerbated whenever Employer attempts to "cut his benefits off." *Id*. at 204a-08a. Regarding communications from Employer's insurer, he testified that "I feel like I'm being

3

bombarded and attacked all the time. Whenever something doesn't go their way, they're on me." *Id*. at 208a.

As part of his opposition to the partial termination petition, Claimant sought counsel fees pursuant to section 440(a) of the Workers' Compensation Act (Act).[1] He argued that there was no reasonable basis for Employer's termination petition. He claimed that the termination petition was in retaliation for his refusal to settle the medical part of his claim. In support, he submitted into evidence printouts of various email correspondence exchanged among Claimant's counsel, defense counsel, and claims adjuster Lorie Myers, between January 5, 2017, and October 23, 2018, which generally outlined inquiries directed periodically to Claimant's counsel by Ms. Myers as to the possibility of resolving Claimant's entitlement to medical benefits. Claimant argued that the emails evidenced an intentional campaign of harassment designed to coerce him into resolving the medical part of his claim. *Id*. at 252a-60a.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. §996(a). Section 440(a) of the Act provides:

> (a) In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

77 P.S. §996(a).

4

## C. Claimant's Penalty Petition – Failure to Pay for Oxycontin

On February 17, 2020, Claimant filed a penalty petition, alleging that Employer failed to pay for necessary medical treatment in violation of section 306(f.1)(5) of the Act, 77 P.S. §531(5).[2] (R.R. at 7a-9a.) Claimant presented, as proof, an exhibit entitled "WIRX Medical Bill Package," which contained Health Insurance Claim Forms summarizing medications prescribed by Dr. Davis. The Health Insurance Claim Forms indicated 24 prescriptions for varying dosages of Oxycontin between 20 mg and 60 mg (once per day and twice per day) with dates of service between April 11, 2019, and July 6, 2020. There was also documentation of prescriptions for Amitriptyline, Valium, Oxycontin, and Narcan with a date of service of July 6, 2020. Notably, the Health Insurance Claim Forms were all dated July 27, 2020. The exhibit contained an affidavit of Nikki Pearsall of WIRX Pharmacy asserting that the bills "were properly submitted" and remained unpaid. *Id*. at 326a-27a. There was also a fee agreement between Claimant's counsel and the pharmacy. No other supporting documentation was provided in the exhibit.

## D. WCJ's Decision

By a decision and order circulated on September 29, 2020, the WCJ denied and dismissed both Employer's partial termination petition and Claimant's

---

[2] Section 306(f.1)(5) provides in relevant part:

> The employer or insurer shall make payment and providers shall submit bills and records in accordance with the provisions of this section. All payments to providers for treatment provided pursuant to this act shall be made within thirty (30) days of receipt of such bills and records unless the employer or insurer disputes the reasonableness or necessity of the treatment provided pursuant to paragraph (6).

77 P.S. §531(5).

penalty petition. Regarding Employer's partial termination petition, the WCJ concluded that Employer did not establish its right to termination of benefits related to the psychological component of Claimant's work injury. The WCJ found, however, Employer's partial termination petition was reasonable based on the presentation of Dr. Rotenberg's testimony, the submission of documents into evidence, and the cross-examination of Claimant. Therefore, the WCJ declined to award counsel fees under section 440(a) of the Act, 77 P.S. §996(a). Regarding Claimant's penalty petition alleging Employer's failure to pay for various lower dosages of Oxycontin, the WCJ found that Claimant had not met his burden of proving a violation of the Act. *Id*. at 327a.

### E. Board's Decision

On October 9, 2020, Claimant appealed the WCJ's decision, asserting that the WCJ capriciously disregarded evidence of Employer's violation of the Act. He argued that in the 2018 UR dispute, the WCJ found Oxycontin 80 mg once every 12 hours and Oxycontin 30 mg twice per day beyond June 7, 2019, unreasonable and unnecessary. However, he argued, Employer has now refused to pay for any dose of Oxycontin, even though they were lower than the dosages found unreasonable and unnecessary in the 2018 UR dispute. He also argued that the WCJ erred in refusing to award counsel fees under section 440(a) of the Act, 77 P.S. §996(a), because Employer's termination petition was unsupported as a matter of law. He further argued that the WCJ capriciously disregarded evidence of Employer/insurer's intentional harassment and callous intention to exacerbate Claimant's depression and coerce him into a settlement of the medical component of his claim.

6

On July 8, 2021, the Board rejected all three issues and affirmed the WCJ's decision in its entirety. The Board determined that the WCJ did not capriciously disregard evidence of a violation of the Act by Employer with respect to the allegedly unpaid medical bills. The Board specifically cited the fact that Claimant's bill exhibit did not include the required medical report forms and Claimant did not establish that Employer/insurer did not explicitly require those forms. The Board further affirmed the determination that Employer had presented a reasonable contest with regard to the partial termination petition based upon the testimony and opinions of Dr. Rotenberg and, therefore, the WCJ was not required to award counsel fees. The Board also addressed allegations by Claimant that Employer/insurer subjected Claimant to alleged harassment by seeking to resolve the claim. The Board noted that the WCJ summarized the evidence of these alleged communications and found that they were reasonable. The Board noted that it was not in the position to overturn the WCJ on the issue of evidentiary weight.

On July 23, 2021, Claimant filed the instant petition seeking review of the Board's order.

## II.    Discussion

Claimant raises the same three issues he raised before the Board. He argues that the matter should be remanded because (1) the WCJ's denial of his penalty petition was the result of the WCJ's capricious disregard of undisputed evidence that Employer violated section 306(f.1)(5) of the Act, by failing to pay properly submitted medical bills; (2) the WCJ erred in finding that Employer's termination petition was reasonable because Dr. Rotenberg's opinions were incompetent; and (3) the WCJ capriciously disregarded Employer/insurer's bad faith motivations and conduct.

7

**A. Reasonable Contest**

Claimant argues that Dr. Rotenberg's testimony, upon which Employer's partial termination petition was based, was not competent and, therefore, was not sufficient as a matter of law to support Employer's contest. He argues that the WCJ, therefore, should have awarded him counsel fees under section 440(a) of the Act. In support, he points out that Dr. Rotenberg agreed that Claimant has severe depression which requires aggressive treatment. He further contends that Dr. Rotenberg did not know the judicially determined injury, and he identified no independent cause for an admitted, ongoing, "severe" condition of the same nature as the work injury. Further, Claimant contends that Dr. Rotenberg's opinions were based on an incomplete and inaccurate foundation because he relied on a report of a defense expert whose opinions were rejected in the 2008 decision defining the work injury. (Claimant's br. at 17.) Upon reviewing the totality of the circumstances and the record, we disagree.

Our Supreme Court recently clarified that Section 440(a)'s use of "shall" is properly interpreted to mean that where "a contested case is resolved in favor of an employee, a reasonable sum for attorney's fees **shall** be awarded to the claimant. Such an award is **mandatory**. Where, however, the employer has established a reasonable basis for the contest, an award of attorney's fees **may** be excluded." *Lorino v. Workers' Compensation Appeal Board (Commonwealth of Pennsylvania)*, 266 A.3d 487, 494 (Pa. 2021) (emphasis in original). "This section is intended to deter unreasonable contests of workers' compensation claims and to ensure that successful claimants receive compensation, undiminished by the costs of litigation." *U.S. Steel Corp. v. Workers' Compensation Appeal Board (Luczki)*, 887 A.2d 817, 821 (Pa. Cmwlth. 2005).

"A reasonable contest is established when medical evidence is conflicting or susceptible to contrary inferences, and there is an absence of evidence that an employer's contest is frivolous or filed to harass a claimant." *Id.* The employer bears the burden of proving a reasonable basis for contesting liability. *Department of Corrections v. Workers' Compensation Appeal Board (Clark)*, 824 A.2d 1241, 1244 (Pa. Cmwlth. 2003). The question of whether a contest is reasonable is one of law, reviewable by this Court based upon the record. *McGoldrick v. Workmen's Compensation Appeal Board (Acme Markets, Inc.),* 597 A.2d 1254, 1257 (Pa. Cmwlth. 1991). In determining the reasonableness of the contest, this Court must look to the totality of the circumstances. *Majesky v. Workmen's Compensation Appeal Board (Transit America, Inc.)*, 595 A.2d 761, 764 (Pa. Cmwlth. 1991). A reasonable contest is established when medical evidence is conflicting or susceptible to contrary inferences, and there is no evidence that an employer's contest was frivolous or intended to harass a claimant. *Orenich v. Workers' Compensation Appeal Board (Geisinger Wyoming Valley Medical Center)*, 863 A.2d 165 (Pa. Cmwlth. 2004).

In the present matter, the WCJ correctly determined that Employer's partial termination petition was prompted to resolve a genuinely disputed issue. *Elite Carpentry Contractors v. Workmen's Compensation Appeal Board (Dempsey)*, 636 A.3d 250 (Pa. Cmwlth. 1993). The facts of record show that Employer presented the testimony of a qualified, unequivocal medical expert who, if found credible, would have supported its petition for termination. Dr. Rotenberg's testimony revealed that he had an understanding of Claimant's work-related psychological injury, both the legally accepted injury and the most recent diagnoses of Claimant's medical expert in this case, Dr. Lipitz. Claimant's argument that the opinions of Dr. Rotenberg were not competent based upon his knowledge of the legally accepted injury is rejected. Dr. Rotenberg

9

provided adequate explanations for Claimant's continuing psychological symptomatology as unrelated to the work injury. (R.R. at 98a-198a.) Dr. Rotenberg acknowledged the adjudicated psychiatric injuries. Dr. Rotenberg opined that Claimant recovered from the adjustment disorder with mixed anxiety and depressive mood a long time ago because an adjustment disorder generally lasts for 3 months and perhaps 6 months and does not last for 20 years by definition in accordance with the Diagnostic and Statistical Manual. *Id.* at 98-198a. The WCJ did not credit these opinions and did not find full recovery of Claimant's psychological injuries; however, the WCJ concluded that Employer had presented a reasonable contest. We find no error in this conclusion.

## B. Capricious Disregard of Evidence of a Violation of the Act

Claimant argues that the WCJ's failure to grant his penalty petition was based on the WCJ's capricious disregard of evidence, which, according to Claimant, proved unconditionally that Employer violated the Act. Claimant contends that during the 2018 UR dispute, six experts "suggested" trying a lower dose of Oxycontin. Claimant contends that the bills identify the doses of medicine prescribed, which were lower than the doses that were subject to the 2018 UR dispute. Claimant alleges that Employer violated the Act by refusing to pay for the lower dosages. He further contends that an undisputed and unopposed Affidavit of a pharmacy employee, Nikki Pearsall, reflects that the bills were properly submitted and remain unpaid by the insurer. Therefore, there was sufficient evidence to establish a violation of section 306(f.1) of the Act, which requires employers to pay a provider's bill within 30 days of receipt thereof. He contends that the WCJ capriciously disregarded this uncontroverted evidence that the Act was violated.

10

The capricious disregard standard is the standard of review employed where the party with the burden of proof is the only party to present evidence, and that burdened party loses. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 550 A.2d 1364 (Pa. Cmwlth. 1988).

Here, because Claimant lost his penalty petition and Employer did not present any evidence on the question of whether the Act was violated, we must use the standard of capricious disregard. In utilizing this capricious disregard standard, we must decide whether the WCJ willfully and deliberately disregarded competent testimony and relevant evidence that one of ordinary intelligence could not possibly have avoided in reaching a result. *Arena v. Packaging Systems Corp.*, 507 A.2d 18 (Pa. 1986). The WCJ's decision must at the very least contain a rational basis in the evidence of record, which could explain her findings. *McGarry v. Workmen's Compensation Appeal Board (Morrissey)*, 606 A.2d 648 (Pa. Cmwlth. 1992). "If specific credibility determinations appear that support the result of the adjudication, then we may affirm the decision below on the basis that the burdened party failed in his burden to persuade the factfinder." *Kirkwood v. Unemployment Compensation Board of Review*, 525 A.2d 841, 844 (Pa. Cmwlth. 1987) (emphasis omitted).

Upon review, we cannot agree that the WCJ capriciously disregarded evidence that established a violation. Under the Act, an employer's obligation to pay medical expenses does not arise until the expenses are submitted on the prescribed forms and the required medical reports are submitted. 77 P.S. §531; *AT&T v. Workers' Compensation Appeal Board (DiNapoli)*, 728 A.2d 381 (Pa. Cmwlth. 1999). Section 306(f.1)(2) of the Act provides, in this regard, as follows:

> Any provider who treats an injured employe shall be required to file periodic reports with the employer on a form prescribed by the [Department of Labor and Industry

11

(department)] **which shall include, where pertinent, history, diagnosis, treatment, prognosis and physical findings. The report shall be filed within ten (10) days of commencing treatment and at least once a month thereafter as long as treatment continues**. The employer **shall not be liable to pay for such treatment until a report has been filed.**

77 P.S. §531(2) (emphasis added).[3]

Where a failure to pay medical bills is the alleged Act violation, a claimant must establish that the medical bills were submitted to the insurer, and those bills must be presented for inclusion in the record. *Roadway Express, Inc. v. Workers' Compensation Appeal Board (Iwasko)*, 723 A.2d 1076 (Pa. Cmwlth. 1999). A workers' compensation claimant is not entitled to recover payment of a bill from his employer where the bill is not properly submitted. *Budd Co. v. Workers' Compensation Appeal Board (Kan)*, 858 A.2d 170, 180 (Pa. Cmwlth. 2004).[4]

Here, Claimant had the burden of establishing a violation. *Shuster v. Workers' Compensation Appeal Board (Pennsylvania Human Relations Commission)*, 745 A.2d 1282, 1288 (Pa. Cmwlth. 2000). To meet that burden, Claimant presented the "WIRX Medical Bill Package," containing Health Insurance Claim Forms summarizing medications prescribed by Dr. Davis and an Affidavit of a pharmacy employee, Nikki Pearsall, which stated that the bills were properly submitted and

---

[3] *See also* 34 Pa. Code §127.203(d) ("If a provider does not submit the required medical reports on the prescribed form, the insurer is not obligated to pay for the treatment covered by the report until the required report is received by the insurer.").

[4] Our courts have held that a provider's failure to submit the required medical reports to the insurer does not excuse the employer from penalties where the insurer did not consistently require them. *Department of Transportation v. Workers' Compensation Appeal Board (Clippinger)*, 38 A.3d 1037 (Pa. Cmwlth. 2011). However, Claimant did not submit any evidence demonstrating that Employer had a history of paying bills that were not accompanied with the requisite forms. Without credible evidence showing that Employer accepted bills for payment that were not in compliance with the Act, the rule announced in *Clippinger* is inapplicable.

remained unpaid. Ms. Pearsall's conclusory Affidavit attesting that the bills were "properly submitted," however, was not determinative of whether Employer violated the Act. Despite the attestations in the Affidavit, there was no evidence that Dr. Davis's bills were properly submitted with the required medical reports in accordance with section 306(f.1)(2) of the Act. To the contrary, the record demonstrates that the "WIRX Medical Bill Package" contained no supporting medical notes, or diagnosis, or description of treatment or any other explanation of the dosages of Oxycontin prescribed that would enable Employer/insurer to assess the reasonableness or necessity of the treatment. Moreover, providers that treat injured employees are required to submit the required medical reports within 10 days of commencing treatment and at least once a month thereafter as long as treatment continues. Section 306(f.1)(2) of the Act, 77 P.S. §531(2). By Claimant's own admission, the only documents provided to Employer were the Health Insurance Claim Forms, which contained a mere summary of the dates and dosages of Oxycontin and which are all dated July 27, 2020, after the penalty petition was filed on February 17, 2020.

To the extent Claimant maintains that Employer was automatically obligated to pay for the various dosages of Oxycontin, without supporting medical records, simply because they were "lower" than those previously found unnecessary and unrelated to the work injury, we disagree. An employer's obligation to pay for reasonable medical and surgical services needed by an injured employee extends only to those expenses connected to an employee's work-related injury. *Halvorsen v. Workmen's Compensation Appeal Board (Congoleum Corp.)*, 632 A.2d 973 (Pa. Cmwlth. 1993). Here, the 2018 UR proceedings resulted in the determination that the Oxycontin prescribed by Dr. Davis from April 12, 2018, and beyond was unrelated to the work injury and unnecessary. Evidently, Dr. Davis lowered Claimant's dosages of

13

Oxycontin in response to the 2018 UR proceedings. However, without Dr. Davis's medical records containing a medical explanation of the new lower dosages, the current needs of Claimant, the tapering plan, and how much or why the lower dosages were reasonable, Employer had no factual basis upon which to confirm or deny causation or the reasonableness and necessity of the underlying treatment represented by these bills or to decide whether it had a valid basis upon which to seek a UR. Under section 306(f.1)(2) of the Act, Employer was not required to pay for this treatment.[5]

Accordingly, based on this record and in these circumstances, we find that the Board correctly determined that the WCJ did not willfully and deliberately disregard Claimant's evidence that he claimed established Employer's violation of the Act. As detailed above, Claimant's evidence lacked credible and persuasive proof of a violation of the Act justifying penalties. We, therefore, reject Claimant's contention the WCJ capriciously disregarded competent evidence.

## C. Capricious Disregard of Evidence of Harassment

In his final issue, Claimant contends that the WCJ capriciously disregarded evidence of Claims Representative Lorie Myers' intentional harassment and callous intention to exacerbate Claimant's depression and coerce him into a settlement.

The capricious disregard standard of review is "not to be applied in such a manner to intrude on the agency fact-finding role and discretionary decision-making authority." *Ward v. Workers' Compensation Appeal Board (City of Philadelphia)*, 966 A.2d 1159, 1164 (Pa. Cmwlth. 2009).

---

[5] That said, we see no impediment to Dr. Davis resubmitting the bills on the appropriate forms, and with the required reports, as mandated by the regulations promulgated under the Act.

14

We do not agree that Claimant's argument can be fairly characterized as one involving the WCJ's capricious disregard of evidence. Instead, it is a challenge to the WCJ's fact-finding role. The WCJ summarized the communications and rejected Claimant's claims of harassment and coercion. In other words, the WCJ did not agree that the emails directed to Claimant's counsel, asking if Claimant was interested in settling the medical portion of his claim, rose to the level of "harassment."

The WCJ has complete authority over questions of credibility, conflicting medical evidence, and evidentiary weight. *Sherrod v. Workmens' Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383 (Pa. Cmwlth. 1995). As matters of credibility and evidentiary weight are within the sole province of the fact-finder, *Pittsburgh Mercy Health System v. Bureau of Workers' Compensation, Fee Review Hearing Office (U.S. Steel Corporation)*, 980 A.2d 181, 184-85 (Pa. Cmwlth. 2009), we will not reweigh the evidence or substitute our credibility determinations for those of the WCJ.

The Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank Hughes,                                     :
                Petitioner           :
                                   :   No. 826 C.D. 2021
               v.                      :
                                   :
Wawa, Inc. (Workers'                              :
Compensation Appeal Board),                       :
                Respondent          :

## *__ORDER__*

       AND NOW, this 8th day of August, 2022, the July 8, 2021 decision of the Workers' Compensation Appeal Board is hereby AFFIRMED.


                                  _____
                                  PATRICIA A. McCULLOUGH, Judge